**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel P. TETA, Defendant–Appellant.**

**No. 89–3797.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1990.

Decided Nov. 28, 1990.

---

John W. Vaudreuil and Grant C. Johnson, Asst. U.S. Atty., Office of the U.S. Atty., Madison, Wis., for plaintiff-appellee.

Ralph A. Kalal, Kalal & Habermehl, Madison, Wis., for defendant-appellant.

Before CUMMINGS and MANION, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Before this court is an appeal from the district court's upward adjustment of a sentence imposed under § 3C1.1 of the United States Sentencing Guidelines following a guilty plea. Defendant-appellant Daniel Teta objects to the court's finding that he willfully obstructed justice pursuant to Guideline § 3C1.1 by failing to appear for arraignment. Because we find that the district court properly applied § 3C1.1 in this case, we affirm the sentence.

## Background

Daniel Teta [Teta] was indicted in Wisconsin on four counts of wire fraud and three counts of transporting money taken by fraud, in violation of 18 U.S.C. §§ 1343 and 2314. After his initial appearance before a magistrate in Illinois, he was released on bail and ordered to appear before Magistrate James Groh in the Western District of Wisconsin on August 1, 1989 for arraignment. Because the defendant traveled to Milwaukee instead of Madison for the court proceeding, the arraignment was rescheduled for August 4, 1989. However, when the defendant again failed to appear on August 4, a bench warrant was issued. He was later arrested and indicted for failure to appear, in violation of 18 U.S.C. § 3146(a)(1). Ultimately, Teta entered a guilty plea on one count of wire fraud; the plea agreement called for the dismissal of the remaining counts in this case and the single count indictment for failure to appear.

Teta was sentenced on December 15, 1989 to a period of 27 months in custody.[1]

That sentence included an enhancement for obstruction of justice under Guideline § 3C1.1, based on defendant's nonappearance for arraignment, and a denial of defendant's request that the sentence be reduced for acceptance of responsibility under Guideline § 3E1.1.

Teta does not contest the validity of the underlying conviction, but challenges the upward adjustment of the sentence under Guideline § 3C1.1. That provision instructs the court to increase the offense level by two levels if the defendant "willfully impeded or obstructed, or attempted to impede or obstruct [,] the administration of justice during the investigation or prosecution of the instant offense." The focus of the sentencing hearing, held on December 15, 1989 before Judge John C. Shabaz, was the court's consideration of that § 3C1.1 upward departure caused by the defendant's failure to appear at the arraignment.

The record reveals facts that were for the most part undisputed. Teta was not present on the initial date set for arraignment, August 1, 1989; however, he telephoned the office of the Clerk of Court to explain that he had understood he should appear in Milwaukee rather than Madison.[2] Attempting to reschedule the matter, the deputy clerk suggested times later on August 1, or on August 2 or 3, but Teta rejected those dates. At this point there is a dispute concerning the alternate date set. The deputy clerk asserted that they had clearly agreed to a rescheduled appearance on August 4, 1989 at 11:30 a.m. However, Teta thought the date was a week later, on August 11, 1989. When he did not appear at the August 4 arraignment, the court issued a bench warrant. Teta was arrested

---

\* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

**1.** Pursuant to the terms of the plea agreement, Teta was found guilty of only one count of wire fraud. Accepting the government's calculation of an adjusted offense level of 15 and a criminal history category of II for Teta's sentence under the Guidelines, the court set sentence at the upper end of the range of imprisonment (27 months) and of supervised release (3 years) because it found Teta to be "a person who's been around the block and knew better." In addition, the defendant was required to pay a special assessment of $50 and restitution of $31,000 to the victims.

**2.** The Pretrial Release Order stated that Teta was to appear before Magistrate Groh in the U.S. District Court for the Western District of Wisconsin, but did not specify the location of the court.

in Missouri en route to the airport while providing a ride to a friend.

In his findings concerning the issue of adjustment for obstruction of justice, Judge Shabaz found the deputy clerk's statement to be the more credible evidence:

> Without any equivocation, [the clerk's] testimony is clear and convincing, and the Court is of the opinion from the statement submitted from the FBI report that the Defendant fully understood that he was to appear as an alternate date on August 4, 1989. He did not appear and was subsequently arrested pursuant to a bench warrant.

Transcript of Sentencing Hearing at 20. Considering next whether Teta, by failing to appear, willfully obstructed justice, the court turned to the "willful" definition found in instruction 6.03 of the Federal Criminal Jury Instructions of the Seventh Circuit for examples of willful conduct:

> An act is done willfully if done voluntarily and intentionally and with the intent to do something the law forbids; that is to say, with the purpose either to disobey or disregard the law.

Transcript at 20. Using that jury instruction as a guide, the court made the determination that the defendant's failure to appear was willful,[3] and concluded that an upward departure for obstruction of justice under § 3C1.1 was appropriate.

### Standard of Review

Our review of a sentence imposed under the Sentencing Guidelines is limited by statute. 18 U.S.C. § 3742(d). When considering a petitioner's challenge of a § 3C1.1 sentence enhancement, we review the district court's factual findings for clear error, and are required to affirm the sentence if we determine that it "was not imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, and is not unreasonable." 18 U.S.C. § 3742(e). "The result is that we will affirm the district court if it correctly applied the Guidelines to findings of fact that do not leave us 'with the definite and firm conviction that a mistake has been committed.'" *United States v. Jordan*, 890 F.2d 968, 972 (7th Cir.1989), quoting *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989).

 The sentencing court's determination that a defendant obstructed justice is a finding of fact to be reviewed under the clearly erroneous standard. *United States v. Brown*, 900 F.2d 1098, 1103 (7th Cir. 1990) (citing *United States v. Franco–Torres*, 869 F.2d 797, 800 (5th Cir.1989)). However, the interpretation of a term of the Sentencing Guidelines, like statutory interpretation, is a question of law subject to *de novo* review on appeal. *See United States v. Goolsby*, 908 F.2d 861, 863 (11th Cir.1990); *United States v. Thomas–Hamilton*, 907 F.2d 282, 285 (2nd Cir.1990); *United States v. Williams*, 891 F.2d 212, 214 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1496, 108 L.Ed.2d 631 (1990).

### Obstruction of Justice, § 3C1.1

The commentary to § 3C1.1 states:

> This section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense.

Teta argues that his failure to appear was simply a mistake; hence it was not a "willful" impediment to the administration

---

**3.** The court's findings were specifically stated: The Court makes the determination that the act here committed by the defendant was willful. There is nothing to demonstrate to the contrary. It was certainly knowingly done, he having knowledge. He knew the offense which was pending against him. He knew by that time where Madison was. Having been a police officer in Chicago for a number of years, he finally determined where Madison was located and was advised to the fact that he should be in Madison on August 4th. The Court finds that from the statement in the file from [the deputy clerk] and the failure of the defendant to appear that he did so willfully. He did it voluntarily. There were no holds on him. He did it intentionally, knowing that it was a disobeying of the law and a disregard of that law.
Transcript of Sentencing Hearing at 21.

of justice. Moreover, he asserts that his nonappearance merely delayed the proceedings, but did not jeopardize the truth-finding function of the court; hence his conduct did not materially affect the outcome of the litigation.

A. *"Willfulness" under § 3C1.1.*

■ Teta contends that § 3C1.1 of the Guidelines requires a *willful* impediment of the administration of justice. Since he intended neither to be absent from the court proceeding nor to obstruct justice, Teta asserts his conduct was not of the type proscribed in § 3C1.1. The defendant recommends that we reject the jury instruction definition of "willful" followed by the district court and instead adopt the Second Circuit's requirement:

> As written, Guidelines § 3C1.1 contains a clear *mens rea* requirement that limits its scope to those who "willfully" obstruct or attempt to obstruct the administration of justice.... [T]he word "willfully," as used in section 3C1.1, requires that the defendant consciously act with the *purpose* of obstructing justice.

*United States v. Stroud,* 893 F.2d 504, 507 (2nd Cir.1990). By not requiring a conscious purpose to obstruct justice, insists Teta, the district court erred in its interpretation of § 3C1.1.

We note, first, that the *Stroud* decision was issued almost a month after this district court's sentencing hearing; hence that definition by the Second Circuit was not available for Judge Shabaz's consideration. However, when we compare the *Stroud* criteria for "willfulness" with the Seventh Circuit jury instruction definition that guided the district court below, we note numerous similarities. The *Stroud* court mandates that the conduct at issue be an act done *consciously* and performed with the *purpose* of obstructing justice; the district court below insisted that the conduct be an act done *voluntarily* and *intentionally* with the *purpose* of disobeying or disregarding the law. Both tests require that the defendant acted deliberately and with the intent to hinder justice, whether by disobeying or disregarding the law. Hence

we find that the meaning of "willful" is substantially similar under those sets of criteria, and the intent requirement found in § 3C1.1 of the Guidelines has been met under both definitions.

It is noteworthy, however, that the Second Circuit acknowledged the meaning of "willful" to be determined by its context. *Id.* at 507. In *Stroud,* where the issue was whether flight from an arresting officer constituted "obstruction of justice," the appellate court drew a distinction between flight to avoid arrest and flight later in the proceedings that would impede the investigation or prosecution, thereby obstructing justice. *Stroud* held that

> ... mere flight in the immediate aftermath of a crime, without more, is insufficient to justify a section 3C1.1 obstruction of justice enhancement.

*Id.* Therefore, in order to adjust a sentence upward under § 3C1.1 for a defendant's flight, under *Stroud* it must be a conscious act done with the purpose of obstructing justice, rather than the purpose of fleeing arrest. This circuit has agreed with that analysis. *See United States v. Hagan,* 913 F.2d 1278 (7th Cir.1990) (§ 3C1.1 not intended to apply to "instinctive flight of a criminal about to be caught by the law"). *See also United States v. Lofton,* 905 F.2d 1315, 1317 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990) (§ 3C1.1 applied to defendant's criminal conduct which continued after defendant admitted the previous crimes and appeared to accept responsibility for them). However, that distinction is not the one being raised by Teta. We find untenable his position that there is a difference between an act done consciously with the purpose of obstructing justice and one done voluntarily and intentionally with the purpose of disobeying or disregarding the law, and decline to adopt it.

■ Because Teta's failure to appear for arraignment twice delayed his prosecution, certainly we can say that his conduct "interfere[d] with the disposition of criminal charges." He had been notified that his presence before the court was more than a polite gesture or a matter to suit his conve-

nience. In the Pretrial Release Order of July 21, 1989 requiring his appearance on August 1, 1989 before Magistrate Groh, Teta was advised that his knowing failure to appear would lead to possible prosecution. By signing that Order, Teta acknowledged that he understood the conditions of his release. Moreover, the district court found that Teta fully understood the mandate to appear on August 4 after he had missed the August 1 arraignment. Characterizing the defendant's second failure to appear as "willful" because he knew the requirements and yet voluntarily and intentionally failed to appear, the district court concluded that Teta's failure to appear was a willful obstruction of justice. We do not find that determination to be clearly erroneous.

Our full review of the evidence, deferentially with respect to the district court's factual findings and in plenary fashion with respect to its use of the Guidelines term "willfully," leads us to the firm conviction that the lower court's findings are correct and that it correctly applied the Sentencing Guidelines. Teta was clearly advised, in the Pretrial Release Order, of the penalties for failure to appear before the court. Even after being excused from these penalties on August 1, he persisted in failing to appear. Teta's deliberate disregard for the court's order to appear is certainly a substantial interference with the disposition of criminal charges and an obstruction of the administration of justice. We will not disturb the district court's carefully articulated reasons for its upward adjustment of the offense level pursuant to § 3C1.1.

### B. *"Obstructing" under § 3C1.1.*

Teta raises two criticisms of the district court's finding that his failure to appear did in fact obstruct justice: first, that the court did not explain its reasoning for its

conclusion, and second, that conduct such as nonappearance in no way risks a miscarriage of justice by distorting the truth-finding function of the judicial process. We consider the second contention first.

 Referring to the illustrations of conduct that might provide a basis for adjusting a sentence (including destruction or concealment of material evidence, perjury, and providing false information, *see* Application Note 1, Commentary to § 3C1.1), the defendant argues that all those listed activities are calculated to obstruct justice by falsifying or skewing the information upon which the judicial decision is predicated. Although such conduct, under Teta's analysis, threatens the truth-finding function of the court and may deserve a sentence enhancement, Teta asserts that his own conduct cannot be so described. The defendant urges this court to define "obstruction of justice" as the corruption of the court's truth-finding function.

We note first that the "obstruction" definition suggested by Teta was explicitly rejected by the Second Circuit in *Stroud* as being too narrow in the interpretation of § 3C1.1. *See Stroud*, 893 F.2d at 506. We decline the invitation to adopt that position as well. Although § 3C1.1 certainly applies to conduct "calculated to mislead or deceive" that may affect the truth-finding function of the court, it also applies to willful interference with the disposition of criminal charges, conduct that may hinder the progress of a case without the use of deceit. We believe that a defendant's willful failure to appear is conduct falling into that latter category.[4] It is worth noting, as well, that the enumerated examples of potentially obstructive conduct found in the commentary to § 3C1.1 are not an exclusive list. § 3C1.1 Application Note 1. Although they reflect conduct that misleads

---

4. We note that the Amendments to the Sentencing Guidelines that became effective November 1, 1990, have enlarged the Application Notes of § 3C1.1. Included in the non-exhaustive list of examples of the type of conduct to which this enhancement applies is found: "(e) Escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as

ordered, for a judicial proceeding." Of course, we must apply the Guidelines in effect at the time Teta was sentenced rather than these revised guidelines. *Miller v. Florida*, 482 U.S. 423, 435–36, 107 S.Ct. 2446, 2453–54, 96 L.Ed.2d 351 (1987); *United States v. Stewart*, 865 F.2d 115, 118 (7th Cir.1988).

or deceives authorities, they do not exclude conduct that interferes with the disposition of criminal charges.

■ The defendant's other criticism is likewise without merit; we found the district court's reasoning to be quite adequate. In determining whether the judicial procedure had been obstructed by Teta's conduct, the court reviewed the undisputed facts. After describing the defendant's (1) nonappearance on August 1, 1989, (2) rejection of three suggested alternative court dates, (3) failure to appear on August 4, 1989, and (4) subsequent arrest, it found such conduct to be an obstruction to the administration of justice. Transcript at 20–21. We cannot consider such a finding to be clearly erroneous.

Other courts reviewing conduct similar to this defendant's have upheld the upward adjustment of § 3C1.1 for obstruction of justice. In *United States v. Perry*, 908 F.2d 56 (6th Cir.1990), a convicted defendant released on bond pending sentence jumped bond and failed to report to his probation officer. Considering whether such acts impeded the administration of justice in the course of the prosecution, that appellate court found that the defendant's conduct "was certainly more serious, and had a greater impact on the proceedings, than giving a false name at the time of arrest." *Id.* at 59.

> ... It is enough, in any event, that [the defendant] disobeyed an instruction to report to the probation officer. If providing false information to the probation officer in the course of the pre-sentence investigation falls within this guideline, as the Application Notes to § 3C1.1 say it does, so does failing to report to the probation officer at all.

*Id. Accord, United States v. Avila*, 905 F.2d 295, 297 (9th Cir.1990) (Guidelines applied where defendant absconded from supervised release prior to sentencing).

We agree. As surely as a defendant impedes the administration of justice by persisting in concealing or falsifying his identity, *see, e.g., United States v. Gaddy*, 909 F.2d 196, 199 (7th Cir.1990) and *United States v. Blackman*, 904 F.2d 1250, 1258–59 (8th Cir.1990), one who fails to appear before the magistrate thwarts the judicial disposition of criminal charges.

The upward adjustment of a sentence under § 3C1.1 has also been justified when the defendant's conduct caused a delay in ascertaining accurate information for the court (*see United States v. Baker*, 894 F.2d 1083, 1084 (9th Cir.1990)), or caused a loss of the government's time and resources because the judicial proceedings were impeded by the defendant's use of a false name. *See United States v. Dillon*, 905 F.2d 1034, 1039 (7th Cir.1990); *United States v. Brett*, 872 F.2d 1365, 1372–73 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). Under this analysis, Teta's contention that he *merely* delayed the proceedings but did not obstruct justice is simply wrong.

It is difficult to imagine conduct that more clearly interferes with the administration of justice than a defendant's failure to be present. When the disposition of the charges cannot proceed until the defendant's presence is secured, and when he must be brought to court under arrest, as transpired in this case, there is obstruction of justice.

### Conclusion

In the case at bar, the district court articulated its findings of fact and presented specific reasons for its upward adjustment of defendant Teta's offense level pursuant to Guideline § 3C1.1. We have weighed Teta's challenges against the evidence produced at the sentencing hearing and the court's reasons for the sentence enhancement. After giving due deference to the district court's credibility determinations, and after accepting its findings of fact unless they are clearly erroneous, we are left with the firm conviction that the lower court's findings are correct. Pursuant to 18 U.S.C. § 3742(e)(3) we hold that the sentencing guidelines were correctly applied and that the sentence of defendant Teta was not imposed in violation of law and was not unreasonable. Accordingly,

we Affirm the sentence imposed by the district court.