77 F.3d 484
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rosalia GOMEZ, Defendant-Appellant.
 No. 95-2199.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 12, 1995.*
Decided Feb. 7, 1996.
 
 Before POSNER, ESCHBACH and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Rosalia Gomez, who was sentenced to a term of 144 months' imprisonment for possession with the intent to distribute cocaine, challenges the district court's decision to enhance her adjusted offense level by two points under U.S.S.G. § 3C1.1 for obstruction of justice. We affirm.
 
 
 2
 On October 29, 1994, an Illinois State Trooper stopped a 1987 Mercury Sable in Sangamon, Illinois, for a traffic violation. The driver was Rosalia Gomez. Accompanying her were Fernando Antonio Valasco-Najar and Gomez's 4-year old daughter. Gomez consented to a search of the car. Thirty-three packages of cocaine, weighing 34.84 kilograms, were found in an electronically controlled hidden compartment behind the rear seat of the vehicle. Gomez and Valasco-Najar were arrested.
 
 
 3
 After her arrest, Gomez waived her Miranda rights and provided a statement to the Illinois State Police. Gomez stated that on October 23, 1994, she met an individual named Francisco Rivera in Cicero, Illinois, who offered her $1,000 to transport cocaine from Texas to Illinois. Gomez informed the police that she drove to Dallas, Texas, picked up the cocaine and, with the help of Valasco-Najar, transported the cocaine back to Illinois. Gomez then stated that she had been instructed by Rivera to deliver the drugs to the parking lot of the Alacran restaurant in Cicero, Illinois.
 
 
 4
 After the Illinois State Police established that Gomez wished to cooperate, they contacted the Drug Enforcement Administration. Gomez agreed to aid state and federal law enforcement authorities in an attempt to facilitate a controlled delivery of the cocaine. Agents placed Gomez's Mercury Sable in the Alacran parking lot. After approximately five and one-half hours of inactivity, the agents became suspicious, and returned to Gomez for an explanation. Gomez confessed that she had lied about the location of the delivery and stated that in fact she was instructed to deliver the cocaine to a person known as "El Paisa," in Milwaukee, Wisconsin--an entirely different state from that originally named by Gomez. Although Gomez provided three cellular phone numbers that she claimed were El Paisa's, attempts to contact El Paisa were also unsuccessful.
 
 
 5
 On November 16, 1994, a one-count indictment was returned charging Gomez with possession with intent to deliver over five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Gomez initially pleaded not guilty. But on February 7, 1995, Gomez changed her plea to guilty. Sentencing followed.
 
 
 6
 Gomez possessed 38.84 kilograms of cocaine, making her base offense level thirty-four. U.S.S.G. § 2D1.1(c)(5). The district court decreased Gomez's offense level by three levels for her acceptance of responsibility. U.S.S.G. § 3E1.1. However, because of her misrepresentation to law enforcement authorities regarding the location of the cocaine delivery, the court enhanced Gomez's offense level by two levels for obstruction of justice. U.S.S.G. § 3C1.1. With an adjusted base offense level of thirty-three and a criminal history category of I, Gomez's applicable guideline range was 135 to 168 months' imprisonment. The district court sentenced Gomez to a term of 144 months' imprisonment, to be followed by a five-year term of supervised release. Gomez brought this timely appeal.
 
 
 7
 Gomez argues that her intentional misrepresentation regarding the delivery of the cocaine did not constitute obstruction of justice because she confessed to possessing the cocaine in question with intent to deliver it. According to Gomez, because she confessed, it was impossible for her lie to impede the government's investigation of her offense of conviction. Reviewing the lower court's determination to the contrary for clear error, United States v. Francis, 39 F.3d 803, 811 (7th Cir.1994), we disagree with Gomez.
 
 
 8
 Section 3C1.1 of the Sentencing Guidelines provides:
 
 
 9
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 10
 U.S.S.G. § 3C1.1. The obstruction or attempted obstruction of justice must pertain to the "conduct charged in the information or indictment under which the defendant was convicted." United States v. Perez, 50 F.3d 396, 398 (7th Cir.1995). Additionally, the defendant must act with the specific intent to avoid responsibility for the offense of conviction. Id. at 399. At the time of her misrepresentation, Gomez had not yet pleaded guilty. She remained free to recant her confession and to require the government to prove that she (1) knowingly possessed cocaine, and (2) intended to distribute it. See United States v. Moralez, 964 F.2d 677, 678 (7th Cir.), cert. denied, 113 S.Ct. 293 (1992). Therefore, the government's investigation of the instant offense necessarily continued.
 
 
 11
 Further, Gomez's efforts to thwart the government's investigation clearly had an adverse impact on the government's ability to convict Gomez of the instant offense if the government was forced to proceed to trial. Had Gomez provided the police with the actual location of the intended delivery, government agents probably would have observed the delivery of the cocaine. This would have helped the government establish that Gomez knew that the substance in the car was a controlled substance, as well as her intent to distribute that substance. See United States v. Kim, 27 F.3d 947, 958 (3rd Cir.1994), cert. denied, 115 S.Ct. 900 (1995). Hence, Gomez's false statement regarding the location of the delivery impeded the government's investigation of its case against her.
 
 
 12
 Gomez maintains, however, that since the district court never expressly found that she intended to obstruct justice, the case must be remanded for resentencing. Although an explicit finding of intent would have been helpful, it is not necessary where the record adequately supports such a determination. See United States v. Barnett, 939 F.2d 405, 408 (7th Cir.1991) (holding that a district court need not make findings that a defendant had a "conscious purpose" to obstruct justice, and expressly rejecting the Second Circuit's conclusion to the contrary); United States v. Teta, 918 F.2d 1329, 1332-33 (7th Cir.1990) (holding that where the defendant's conduct was intentional, the district court need not make findings that the defendant intended to obstruct justice); see also United States v. Haddad, 10 F.3d 1252, 1261 (7th Cir.1993) (holding that where the district court concludes that a defendant qualifies for an enhancement pursuant to U.S.S.G. § 3C1.1 without expressly finding that the defendant intended to obstruct justice, we examine the facts of the case to determine whether there was a sufficient basis to support such a finding); cf. United States v. Carson, 9 F.3d 576, 585 (7th Cir.1993) (affirming enhancement under U.S.S.G. § 3B1.1(a) despite the fact that the district court did not make a specific finding that the defendant exercised sufficient control over four other members of the conspiracy, because the record adequately supported such a determination), cert. denied, 115 S.Ct. 135 (1994). But see United States v. Reed, 49 F.3d 895 (2nd Cir.1995) (holding that a district court must expressly find an intent to obstruct justice). Gomez's "misrepresentation" was intentional and, as stated above, impeded the government's investigation of its case against her. Although she had already confessed to committing the offense of conviction at the time of her misrepresentation, she had not yet pleaded guilty. Gomez may have changed her mind about confessing and made her misrepresentation regarding the location of the delivery in an attempt to weaken the government's case against her.
 
 
 13
 What is more, it is difficult to infer any motive for Gomez's lie other than a desire to thwart the investigation of her offense. Gomez claims she either did not know, or barely knew, the parties for whom she was transporting the drugs. Thus, it is hard to believe that Gomez either feared these parties or desired to protect them--she hardly knew them. Therefore, we believe that the only plausible inference from the facts of this case is that Gomez sought to derail the investigation of the instant offense, and lied to do it.
 
 
 14
 We conclude that there was an adequate basis for the district court to conclude that Gomez intended to obstruct the investigation of her offense. Therefore, the district court's conclusion that Gomez obstructed justice is not clearly erroneous. The judgment of the district court is AFFIRMED.