UNITED STATES OF AMERICA, Plaintiff–Appellee,

v.

Lester O'Neal GILLEYLEN, Defendant–Appellant.

No. 95–2819.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1996.

Decided April 8, 1996.

Michael C. Carr, Deidre Durborow (argued), Office of U.S. Atty., Benton, IL, for U.S.

Melissa A. Day, Andrea Smith (argued), Office of Federal Public Defender, Benton, IL, for Lester Oneal Gilleylen.

Before CUMMINGS, RIPPLE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

July 9, 1994, was not a good day for Lester O'Neal Gilleylen. To start with, police in Carbondale, Illinois, stopped his 1995 Mustang for a traffic violation. After the stop, a loaded semi-automatic pistol was discovered on the floor of the car. Trumping these events, the police discovered that Gilleylen (he first told the police his name was "Gilley" but later changed that to "Gillen") had a conviction for burglary, a felony, on his record. This mix earned Gilleylen a one-count indictment charging possession of a firearm by a felon, to which he plead guilty in the United States District Court for the South-

ern District of Illinois. His appeal to this court raises two sentencing issues. Neither issue requires much comment, but we'll talk about one because its a pretty good example of how not to present an issue for appellate review.

Gilleylen's base offense level under the Federal Sentencing Guidelines was twenty. He was tagged with a two-point enhancement for obstruction of justice, but he was also given three points off for timely acceptance of responsibility. This put his adjusted offense level at 19, and his criminal record spotted him in criminal history category III. His guideline range, accordingly, was 37 to 46 months. He was sentenced to serve a term of 40 months.

Gilleylen challenges the two-point enhancement for obstruction of justice. If he wins on this point, he moves down to level 17 under the guidelines and his sentencing range drops to 30–37 months. Gilleylen also advances a backup argument; that only a one-point obstruction enhancement should have been ordered. If the obstruction enhancement is halved, Gilleylen moves to level 18 and a range of 33 to 41 months.

The sentencing guidelines call for a two-level increase in offense level if a defendant obstructs justice. Section 3C1.1 provides:

### Obstructing or Impeding the Administration of Justice

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by two levels.

The commentary on obstruction contains a "non-exhaustive" list of examples of conduct to which the enhancement applies. One of the examples is "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding." Gilleylen received his enhancement because he failed to show up in court for a scheduled pretrial conference. His failure to appear resulted in an issuance of an arrest warrant. Nine days

after he failed to appear, but before the arrest warrant was actually executed, Gilleylen self-surrendered to the police in Carbondale, and they turned him over to the United States Marshal.

Neither side to this appeal has presented the obstruction issue very well. Gilleylen relies on an Eighth Circuit decision, *United States v. Crumb*, 902 F.2d 1337 (8th Cir. 1990). In fact, *Crumb* is the only case cited by Gilleylen in support of his argument. The problem, however, is that *Crumb* doesn't have anything to do with the issue Gilleylen raises. But you would never know that from reading the government's responsive brief because it fails to mention *Crumb*. Citing a case for the wrong reason and failing to mention your opponent's primary case and note its deficiencies are not exemplary appellate practice qualities. More care should have been taken in this case to properly present this issue for review.

In his brief, Gilleylen tells us "the question of whether a defendant can mitigate the two-level enhancement for obstruction of justice has previously been addressed." He then cites the following passage from *Crumb*:

[W]e agree that [the defendant's] voluntary surrender a little more than a week after his failure to appear for service of his sentence is a circumstance not taken into account by the Guidelines. Because nothing in the Guidelines forbids the district court from considering the voluntariness of a defendant's surrender or the length of a defendant's delay in surrendering, the district court was free to consider these facts as mitigating circumstances.

Gilleylen then goes on to tell us that the court in *Crumb* "clearly recognized the deficit in the Guidelines in terms of application of the obstruction of justice enhancement." Not even a distorted reading of *Crumb* can support this claim. Let's look at what *Crumb* was really about.

The defendant in *Crumb*, who of course was Mr. Crumb, had his federal probation revoked and was ordered to self-surrender at a federal correctional institution for the service of his sentence. He didn't show up, and a warrant for his arrest was issued. Nine days after his surrender date, but before he

was apprehended on the warrant, Crumb presented himself at the institution. Crumb's failure to appear resulted in a new charge of failing to surrender for service of sentence in violation of 18 U.S.C. § 3146(a)(2). At sentencing, the court granted a downward departure of two levels because Crumb voluntarily appeared at the institution and that, in the view of the district court, mitigated the seriousness of the underlying offense of failure to appear. An obstruction of justice enhancement under § 3C1.1 of the guidelines was never at issue in the *Crumb* case. *Crumb* does not come close to being relevant authority in this case. The government should have told us that in its brief.

■ Whether a defendant obstructed justice is normally a fact-specific determination. For that reason, it's not always helpful to review other cases, but we note, however, in *United States v. Teta,* 918 F.2d 1329 (7th Cir.1990), that we upheld an obstruction enhancement for a defendant who failed to appear for arraignment. Because the failure to appear had a delaying effect on the administration of justice, we concluded that the enhancement was appropriate. In our case, Gilleylen elected not to appear for a scheduled court proceeding. A defendant in a federal criminal case does not have that option. Because he failed to offer an explanation for his nonappearance that was acceptable to the district judge, the enhancement was appropriate. But that is not to say that the district court was forced to impose the enhancement under the circumstances in this case. The call was for the district court to make, and its finding that the administration of justice was delayed is not clearly erroneous. The fact that Gilleylen appeared voluntarily rather than after having been arrested is a point in his favor but it does not mandate that he get a pass under § 3C1.1. We also reject the defendant's alternative argument which we recharacterize as urging that a "mild" obstruction should result in an enhancement of only one point rather than two. In formulating the guidelines, the Sentencing Commission certainly, if anything, knows how to departmentalize categories of aggravating and mitigating circumstances. For example, § 3B1.2 sets a four-level decrease

for a minimal participant in criminal activity and a two-level decrease for a minor participant. For defendants falling between minimal and minor, a decrease of three points is authorized. Had the Sentencing Commission wanted to permit gradations of obstructions, it certainly could have done so. It didn't, and we decline to authorize the reduction as a judicial rule. The defendant's challenge to the two-level enhancement therefore is denied.

Gilleylen also raises a question regarding his placement in criminal history category III rather than II. The placement in III is appropriate if a conviction in Minnesota on November 11, 1994, is counted. We believe it was properly counted and Gilleylen's placement in criminal history category III was correct. There being no other issues in this case, the judgment of the district court is AFFIRMED.