In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2340

UNITED STATES of AMERICA,

Plaintiff-Appellee,

v.

CHARLES BOLDEN,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98-CR-936-1--George W. Lindberg, Judge.

ARGUED DECEMBER 11, 2001--DECIDED January 31, 2002

   Before BAUER, RIPPLE and ROVNER, Circuit
Judges.

   RIPPLE, Circuit Judge.  Charles Bolden
was charged in a three-count indictment
with conspiracy to distribute cocaine and
possession of cocaine with intent to
distribute. Mr. Bolden was convicted on
all three counts at a bench trial. At
sentencing, the district court adjusted
Mr. Bolden's offense level upward by two
levels for obstruction of justice. Mr.
Bolden now challenges both his conviction
for drug conspiracy and the upward
adjustment. For the reasons set forth in
the following opinion, we affirm
thejudgment of the district court.

I

BACKGROUND

A.  Facts

   In December 1998, Nathaniel Nettles-Bey,
an acquaintance of Mr. Bolden, became an
informant for the Drug Enforcement
Administration (DEA). Nettles-Bey
informed the DEA that he knew of an
individual who would sell him cocaine. On
December 15, 1998, in cooperation with
the DEA, Nettles-Bey arranged to buy
cocaine from Mr. Bolden at the home of
Marcus Davis in Blue Island, Illinois.

DEA Special Agents Daniel Foley and Robert Glynn conducted surveillance of Davis' home on the morning of December 16. Mr. Bolden, Nettles-Bey and Davis met inside Davis' house. After Mr. Bolden left Davis' house, Nettles-Bey met with Agent Foley and gave him a package containing approximately one kilogram of cocaine which he said he had received from Mr. Bolden. Agent Glynn followed Mr. Bolden by car to Harvey, Illinois, where he stopped Mr. Bolden and arrested him.

B.  District Court Proceedings

Mr. Bolden was charged with one count of conspiring to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. sec.sec. 846 and 841(a)(1), and two counts of possession with intent to distribute in excess of 500 grams and two kilograms of cocaine, respectively, in violation of 21 U.S.C. sec. 841(a)(1). Mr. Bolden's trial was set for July 12, 1999. Mr. Bolden, however, failed to appear, and a bench warrant was issued. The trial ultimately commenced more than two months later. Mr. Bolden waived his right to a jury trial. At the bench trial, the government presented testimony from Marcus Davis and Agents Foley and Glynn.

Davis testified that he met with Mr. Bolden at Doghouse Records, a record store managed by Mr. Bolden. Davis asked Mr. Bolden if he was still "in the game," a reference to the sale of cocaine. Tr. of Sept. 27, 1999, at 70. Mr. Bolden told Davis that he was still "in the game" and asked him to "give me a call if you know somebody want to get something." Id.

Davis subsequently asked Nettles-Bey if he knew anyone who wanted to buy cocaine. A few days later, Nettles-Bey called Davis and asked him to contact his cocaine source. Davis then told Mr. Bolden that his "cousin," meaning Nettles-Bey, wanted to "get something." Id. at 71.

Davis further testified that he arranged a meeting between himself, Mr. Bolden and Nettles-Bey at his home. When Mr. Bolden arrived at Davis' home, he gave Nettles-Bey a plastic bag containing a package wrapped in duct tape. Nettles-Bey examined the package, which contained a white powder, and then paid Mr. Bolden.

Davis, the middle-man, received $500 from Mr. Bolden when Nettles-Bey told him that he wanted to buy two more grams of cocaine. Davis scheduled another meeting with Mr. Bolden at Davis' home.

According to Davis, Mr. Bolden came to Davis' home on December 16 and gave Nettles-Bey a large detergent box. After Mr. Bolden left Davis' house, Nettles-Bey removed two packages from the box, placed one in a closet and placed the other back in the box./1

DEA Agent Foley testified that he observed Mr. Bolden arrive at Davis' house on December 16 and enter carrying a large detergent box. After the meeting was over and Mr. Bolden drove away, Nettles-Bey met with Agent Foley and gave him the detergent box. Agent Foley found a package containing approximately one kilogram of cocaine inside.

Agent Glynn testified that he followed Mr. Bolden by car to Harvey, Illinois, after Mr. Bolden left Davis' home. When Agent Glynn was informed by other DEA agents that Nettles-Bey had received a kilogram of cocaine from Mr. Bolden, Agent Glynn stopped Mr. Bolden and arrested him. Agent Glynn stated that he read the Miranda warnings to Mr. Bolden, who agreed to speak with him. According to Agent Glynn, Mr. Bolden admitted that he had just delivered two kilograms of cocaine in a detergent box to Davis and another individual and that he had delivered two kilograms to the same individuals two or three weeks earlier. Agent Glynn told the court that the package containing the second kilogram of cocaine was recovered from Davis' house later that afternoon.

Agent Glynn also testified that Mr. Bolden admitted that he obtained about six to seven kilograms of cocaine per month from his supplier, Ivan Eberhardt, and that he had been engaged in business with him for about a year. Cooperating with the DEA, Mr. Bolden contacted Eberhardt to arrange a meeting. Agent Glynn testified that he observed Mr. Bolden meet with Eberhardt on the following day, December 17. The Government and Mr. Bolden stipulated to the admission into evidence of phone records documenting calls between Mr. Bolden and Eberhardt.

After considering the evidence presented at trial, the court found Mr. Bolden guilty. Mr. Bolden was convicted on one count of conspiracy to distribute cocaine and two counts of possessing cocaine with intent to distribute. The court adjusted Mr. Bolden's offense level upward by two levels for obstruction of justice because of his failure to show up for his original trial date. Mr. Bolden objected to the upward adjustment, arguing that there was no proof that his failure to appear had been willful. The court overruled his objection. The district court sentenced Mr. Bolden to a term of 168 months on the conspiracy count and two terms of 60 months for the two possession counts to be served concurrently with each other and with the conspiracy sentence.

II

DISCUSSION

A.

Mr. Bolden submits that his conspiracy conviction should be reversed because of insufficient evidence. We must uphold a conviction if any reasonable factfinder could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Menting, 166 F.3d 923, 928 (7th Cir. 1999). Overturning a verdict is appropriate only when the record contains no evidence, regardless of how it is weighed, from which a factfinder could determine guilt beyond a reasonable doubt. United States v. Granados, 142 F.3d 1016, 1019 (7th Cir. 1998). To convict Mr. Bolden of conspiracy, the Government needed to prove that a conspiracy existed and that Mr. Bolden knowingly joined it. United States v. Pagan, 196 F.3d 884, 889 (7th Cir. 1999).

Mr. Bolden submits that his confession was the sole evidence supporting his conspiracy conviction. We cannot accept this argument. The district court had before it not only Mr. Bolden's confession but also the testimony of Davis and of the DEA surveillance agents who had observed Mr. Bolden meet with Davis and with Eberhardt. The Government and Mr. Bolden also stipulated to the

admission of telephone records that evidenced calls made by Mr. Bolden to his cocaine supplier.

Mr. Bolden contends, however, that all the evidence presented against him at trial, with the exception of his confession, supported only the charges of possession with intent to distribute and not the conspiracy count. This argument has no merit. Much of the evidence presented at trial supported both the charges of possession with intent to distribute and the conspiracy count. Davis testified not only that Mr. Bolden distributed cocaine to Nettles-Bey, but also admitted that he conspired with Mr. Bolden to distribute the cocaine and received payment for his services as middle-man. Likewise, Agent Foley's surveillance of Mr. Bolden revealed not only that Mr. Bolden distributed cocaine to Nettles-Bey, but also that Davis was present during these transactions which took place at Davis' home. Agent Foley's version of events was consistent with Davis', and the testimony of both witnesses established that Mr. Bolden conspired with Davis to distribute cocaine to Nettles-Bey. Furthermore, Agent Glynn's observation of a meetingbetween Mr. Bolden and Eberhardt, who supplied his cocaine, established not only that Mr. Bolden intended to distribute cocaine, but that he conspired with his cocaine supplier to do so. Finally, the telephone records that document communication between Mr. Bolden and Eberhardt further substantiated the existence of a conspiracy. This evidence taken together provided a sufficient basis for the district court to find Mr. Bolden guilty beyond a reasonable doubt of conspiracy, as well as possession with intent to distribute.

Mr. Bolden also objects strenuously to the sufficiency of the evidence used to establish the quantity of cocaine involved in the conspiracy. The Government relied upon Mr. Bolden's confession to establish that he conspired to distribute more than five kilograms. Mr. Bolden argues that his confession, standing alone, was insufficient evidence to establish the quantity of cocaine at issue here. Drug quantity, however, is not an element of the offense of conspiracy to distribute. See 21 U.S.C. sec. 846; United States v. Hill, 252 F.3d

919, 922 (7th Cir. 2001). In Mr. Bolden's case, drug quantity was relevant only to sentencing, not to the determination of guilt. See id.

B.

Mr. Bolden also challenges the sentencing court's upward adjustment of his offense level for obstruction of justice. The determination that a defendant obstructed justice is a finding of fact, which this court reviews for clear error. United States v. Stokes, 211 F.3d 1039, 1044 (7th Cir. 2000). If a sentencing judge finds that a defendant has obstructed justice, the judge shall increase the offense level by two levels. U.S.S.G. sec. 3C1.1; Stokes, 211 F.3d at 1045. "Willfully failing to appear, as ordered, for a judicial proceeding" is an example of obstructive conduct that will justify such an upward adjustment. U.S.S.G. sec. 3C1.1, application note 4(e). This court reviews interpretations of terms used in the sentencing guidelines, such as "willful," de novo. United States v. Teta, 918 F.2d 1329, 1332 (7th Cir. 1990).

Mr. Bolden argues that there was no evidence that his failure to appear at trial was "willful." In support of this argument, Mr. Bolden points out that he did not attempt to engage in illegal activities, flee the jurisdiction, alter his appearance, or otherwise elude the authorities in the time that elapsed between his failure to show up for his trial and his arrest pursuant to a bench warrant at his home four days later.

A defendant's failure to appear is "willful," however, if the defendant knew that he was required to appear in court and "voluntarily and intentionally" failed to do so. Teta, 918 F.2d at 1334. Mr. Minkus, Mr. Bolden's attorney, told the court that Bolden was absent "against [his] strong and repeated advice." Tr. of July 12, 1999, at 3. When the court recessed to allow Mr. Bolden the opportunity to show up for his trial, Mr. Minkus paged Mr. Bolden. Mr. Minkus reported to the court, on the record, that Mr. Bolden had called in response to the page and stated that he was not coming to court. Mr. Bolden knew that his presence was required in court on his trial date and nevertheless decided not

to attend.

Furthermore, an upward adjustment for obstruction of justice is appropriate when a defendant's actions have had a "delaying effect on the administration of justice." United States v. Gilleylen, 81 F.3d 70, 72 (7th Cir. 1996). Mr. Bolden's refusal to come to court, even at his attorney's urging, necessitated his arrest; because of his actions, his trial did not begin until more than two months after it was originally scheduled. See Teta, 918 F.2d at 1335 ("It is difficult to imagine conduct that more clearly interferes with the administration of justice than a defendant's failure to be present. When the disposition of the charges cannot proceed until the defendant's presence is secured, and when he must be brought to court under arrest, . . . there is obstruction of justice.").

It was not necessary that Mr. Bolden attempt to flee the jurisdiction or forcibly resist arrest when apprehended in order for his behavior to constitute obstruction. We have upheld upward adjustments for obstruction of justice many times when defendants failed to appear for judicial proceedings, necessitating the issuance of a bench warrant. See, e.g., United States v. Green, 114 F.3d 613, 620 (7th Cir. 1997) (upward adjustment for obstruction of justice appropriate when defendant failed to appear for sentencing hearing); Gilleylen, 81 F.3d at 72 (upward adjustment for obstruction of justice appropriate where defendant failed to appear for pretrial conference but appeared voluntarily before a bench warrant was executed); Teta, 918 F.2d at 1333-34 (upward adjustment for obstruction of justice appropriate where defendant failed to appear for arraignment and was subsequently arrested on a bench warrant). The fact that Mr. Bolden made no attempt to elude authorities, who found him in his home, may have been a "point in his favor," but did not require "that he get a pass under sec. 3C1.1." Gilleylen, 81 F.3d at 72. The district court did not err in finding that Mr. Bolden willfully obstructed justice.

Conclusion

Because the government presented

sufficient evidence to prove Mr. Bolden guilty of conspiracy beyond a reasonable doubt and because the sentencing court did not commit clear error in finding that Mr. Bolden obstructed justice, we affirm the judgment of the district court.

AFFIRMED

FOOTNOTE

/1 The record does not reflect why Nettles-Bey placed one of the packages in Davis' closet.