# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 03-2965

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RAMON TORO,

Defendant-Appellant.

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 7—**Joan B. Gottschall**, *Judge.*

————————

ARGUED FEBRUARY 13, 2004—DECIDED MARCH 4, 2004

————————

Before FLAUM, *Chief Judge*, and MANION and DIANE P. WOOD, *Circuit Judges.*

FLAUM, *Chief Judge*. In 2002, a jury convicted Ramon Toro of conspiracy to possess with intent to distribute more than one kilogram of PCP. Toro now appeals his conviction. For the reasons stated herein, we affirm.

## I. BACKGROUND

Ramon Toro was introduced to Christine Williams in the summer of 2001 by Williams' boss, Napoleon Moore. Moore, a drug dealer, instructed that Williams begin supplying Toro with PCP. According to Williams, either Toro or

Moore would contact her to arrange a transaction. Williams met with Toro approximately once a week for the next six months and supplied him with one pint of PCP on more than twenty occasions. Williams believed that Toro divided up the PCP he purchased from her and distributed it on 18th Street in Chicago.

In September 2001, the FBI began a PEN register on one of Williams' telephones. The PEN register recorded numerous calls from Toro to Williams over the next two months. The FBI also placed a wiretap on Williams' phone from November to December 2001. The wiretap recorded several phone calls between Williams and Toro, as well as two conference calls between Williams, Toro and Moore. During one of these calls, agents overheard Williams and Toro arrange a deal. A Chicago police officer drove to the scene of the deal and observed Williams transfer a plastic bag from her car to Toro's car. Later that day, Williams called Moore and told him that she had seen Toro and sold him one pint of PCP. Over the next two weeks, the wiretap recorded conversations in which Moore and Williams established two more deals with Toro, for one pint and eight ounces of PCP respectively.

Williams was arrested by the FBI on December 16, 2001. She quickly agreed to cooperate and provide the FBI with information about her customers. Williams then called Toro and agreed to sell him eight ounces of PCP for $1,000 on January 2, 2002.

On January 2, 2002, Toro drove to the location where he believed he was meeting Williams. He subsequently was arrested by FBI agents. A search of his car recovered over $1,000 in cash and a box containing one hundred small glass vials similar to those used to distribute PCP.

Following his arrest, Toro was read his *Miranda* rights and was asked to read them himself. Toro signed a waiver of his rights and gave a confession two hours later. Toro's

confession included details about his drug purchases dating back to 2000, as well as his purchases from Williams beginning in the summer of 2001. According to Toro, he purchased PCP from Williams once or twice a week, all in quantities of eight ounces or less.

Toro subsequently was charged with conspiracy to possess and distribute more than one kilogram of PCP. On December 19, 2002, a jury found Toro guilty. Toro was sentenced to 240 months imprisonment and now appeals.

## II. DISCUSSION

Toro's first issue on appeal is whether there was sufficient evidence presented from which a rational jury could conclude that Toro conspired to possess with intent to distribute more than one kilogram of PCP. While Toro admits that he purchased PCP several times, he asserts that during the last four months of the six-month conspiracy he purchased PCP on only four occasions and never purchased more than a few grams at a time. Toro also argues that Williams was an incredible witness whose testimony was inconsistent and contradicted by Toro's testimony.

We will uphold a jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court has explicitly held that "[d]rug quantity . . . is not an element of the offense of conspiracy to distribute," and that the jury's determination of drug quantity is relevant to sentencing only. *See United States v. Bolden*, 279 F.3d 498, 502 (7th Cir. 2002); *United States v. Hill*, 252 F.3d 919, 922 (7th Cir. 2001). Moreover, even if drug quantity was an essential element of Toro's offense, there was sufficient evidence to support the jury's finding that Toro conspired to distribute more than one kilogram of PCP.

We emphasize that "questions of credibility are solely for the trier of fact" and that "absent extraordinary circumstances, this court will not reevaluate the testimony of a witness to determine his or her motives or other possible measures of reliability." *See United States v. Buchmeier*, 255 F.3d 415, 420 (7th Cir. 2001). According to Williams' testimony at trial, Toro purchased one pint of PCP every week for six months. As one pint of PCP is equal to 398 grams, just three such sales would bring Toro's total purchases to more than one kilogram. Thus, Williams' testimony provides sufficient evidence to support the jury's finding that Toro conspired to possess and distribute more than one kilogram of PCP.

Toro's arguments that it was physically impossible for him to have distributed more than a kilogram of PCP between June and December 2001 are without merit. First, even using Toro's mathematical calculations (which are suspect since Toro assumes each drug transaction takes fifteen to twenty minutes and that only one vial is exchanged in each sale), Toro could have distributed this quantity of PCP if he worked every day for ten hours. While this is a substantial workday, it does not rise to the level of being impossible under the laws of nature. *See Bergmann v. McCaughtry*, 65 F.3d 1372, 1378 (7th Cir. 1995) (holding that to find a witness' testimony incredible as a matter of law, the defendant "must demonstrate either that it was physically impossible for the witness to observe that which she claims occurred or that it was impossible under the laws of nature for the occurrence to have taken place at all"). Second, Toro was not charged with sale of more than a kilogram of PCP, but rather with engaging in a conspiracy to do so in violation of 21 U.S.C. § 846. Therefore, in order to sustain his conviction, the government must only "present substantial evidence that a conspiracy existed and that the defendant agreed to join it"; the government need not prove that the defendant completed the underlying

offense. *See United States v. Benjamin*, 116 F.3d 1204, 1206 (7th Cir. 1997). Thus, Toro did not need to sell more than one kilogram of PCP to be guilty of a conspiracy to distribute that amount and Toro's arguments to the contrary must fail.

Toro also challenges the admission of certain evidence at trial. Specifically, Toro argues that the district court misapplied Federal Rules of Evidence 403 and 404(b) by allowing into evidence testimony concerning Toro's possession of PCP with intent to distribute it in 1996 and Toro's possession of ten vials of PCP in 1999.

We review a district court's evidentiary rulings for an abuse of discretion. *See United States v. Williams*, 216 F.3d 611, 614 (7th Cir. 2000). In deciding if evidence was properly admitted under Rules 403 and 404(b) we ask whether: "(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir. 1994).

The government contends that Toro's prior PCP possession was properly admitted because it was used to show Toro's intent to distribute PCP. We agree that Toro's intent to distribute PCP was at issue in this case. *See United States v. Monzon*, 869 F.2d 338, 344 (7th Cir. 1989) (holding that drug distribution is a specific intent crime, and therefore evidence of the defendant's intent is always relevant). We therefore conclude that the evidence was directed toward establishing a matter in issue other than the defendant's propensity to violate the law. Furthermore,

we agree that Toro's possession with intent to distribute PCP in 1996 was extremely similar to the acts charged in this case and was close enough in time to be relevant because it occurred just five years prior to the charged crime. *See Kreiser*, 15 F.3d at 640 (stating that "seven years is close enough in time" for evidence to be admissible under Rule 404(b)). It is a closer call whether Toro's possession of PCP in 1999 was similar enough to be relevant to show his intent to distribute PCP. However, this Court has held that past possession of narcotics is relevant to show intent to distribute narcotics if the past possession was of "distribution amounts." *See United States v. Wash*, 231 F.3d 366, 371 (7th Cir. 2000); *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996). Considering that Toro's brief argues that PCP is distributed one vial at a time, Toro's possession of ten vials in 1999 could be considered a distribution amount and therefore would be relevant to show intent to distribute narcotics. Finally, we conclude that the evidence presented by the government was sufficient to support a finding that Toro committed the prior acts because the government presented direct eyewitness testimony from two Chicago police officers, one of whom observed Toro possessing PCP in 1999 and one of whom observed Toro distributing PCP in 1996. *See United States v. Long*, 86 F.3d 81, 85 (7th Cir. 1996) (holding that eyewitness testimony is sufficient to support a finding for Rule 404(b) purposes).

We therefore proceed to determine whether the district court properly balanced the probative value of the evidence against its prejudicial impact. Toro asserts that the district court did not engage in any Rule 403 analysis, and that if it had made such an inquiry the evidence would have been excluded. However, this argument is belied by the transcript, which shows that the district court engaged in extensive discussions with counsel about the evidence's relevance and prejudice spanning fifteen pages of dialogue

between the parties. The district court's obvious concern that evidence of past crimes tempts jurors to convict based upon propensity, an impermissible use under Rule 404(b), makes clear that the district court carefully considered this issue. Ultimately, the district court concluded that despite the prejudicial effect of this evidence, it was highly probative of Toro's intent to distribute PCP. When this Court reviews such determinations, "we accord the district court's decision great deference, only disturbing it if no reasonable person could agree with the ruling." *United States v. Thomas*, 321 F.3d 627, 630 (7th Cir. 2003). Under this standard of review, we decline to overturn what was clearly a deliberative and reasoned decision of the district court.

Finally, Toro argues that he was entitled to a pre-trial hearing to determine the voluntariness of his confession. Toro concedes that he had the burden of presenting "definite, specific, detailed, and nonconjectural facts" to establish that there was a disputed issue of material fact as to the voluntariness of his confession. *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1995). The defendant must make this prima facie showing of illegality without relying on vague or conclusory allegations. *See United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). Toro did not meet this burden.

Prior to his trial, Toro filed a motion to suppress his post-arrest confession. This motion was supported by Toro's affidavit, which listed three reasons why his confession was involuntary: (1) "at the time of my arrest, I was not fully aware or conscious of the events surrounding the arrest"; (2) "after my arrest, because of my condition (intoxication), I was unable to understand the Miranda warnings given to me"; (3) "I was tricked and confused into giving the written statement that I gave upon my arrest and the statement was not voluntary." Clearly, Toro's third allegation is too conclusory to make a prima facie showing that his confession was involuntary. Toro provided no details about how he

was tricked and confused, who may have tricked and confused him, or why this trickery and confusion rises to the level of coercion. Toro's first two allegations are also insufficient. Although Toro claimed that his intoxication caused him to be unaware of the events surrounding his arrest and to not understand his *Miranda* rights, Toro provided no details about how he was intoxicated, what substance he was intoxicated with, or the level of intoxication he suffered. Even if Toro had provided the district court with this information, intoxication alone does not show involuntariness. *See United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992) (stating that "a defendant's intoxication . . .—without some showing of coercion by the government—will not negate voluntariness"). "A diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective." *Id.* Since Toro did not detail any facts showing mental or physical coercion by the police, he did not meet his burden of showing a prima facie case of involuntariness and therefore was properly denied an evidentiary hearing.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*