# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-3250

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ANTHONY ALLEN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 01 CR 80—**William C. Lee**, *Judge.*

———————

ARGUED DECEMBER 8, 2003—DECIDED NOVEMBER 29, 2004

———————

Before WOOD, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* A jury convicted defendant Anthony Allen of burglarizing the Standard Federal Bank in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2. Allen challenges his conviction, arguing that: (1) the government did not present sufficient evidence to support his conviction, (2) the government's use of an expert shoe-print witness at trial was improper, (3) the admission at trial of a photograph of him taken shortly after his arrest was prejudicial, (4) his trial counsel rendered ineffective assistance, and (5) the district court's aiding and abetting jury instruction was flawed. We find all of Allen's arguments unpersuasive and for the reasons stated below, we affirm.

## I.  Background

On October 28, 2001 around 11 p.m., Fort Wayne, Indiana police dispatch received a 911 hang-up call suggesting that Standard Federal Bank's alarm system may have been disabled. Officer Shane Hopkins was the first to arrive on the scene. When Officer Hopkins, who had provided security services at the bank on occasion, arrived he noticed that the security and interior lights were out and the automatic teller machine ("ATM") doors were open. When he went to the bank's rear entrance, someone opened the door from the inside. Officer Hopkins, who was about seven feet away, described the individual as a black male, approximately six foot one or six foot two inches in height, wearing a dark blue jacket and shirt, black pants, and a black ski mask. Upon seeing Officer Hopkins, the individual ran back into the bank. Officer Hopkins radioed for assistance.

Officer Hopkins also relayed the description of the individual to Officer Jeffrey McCann, the next officer to arrive at the bank. Officer McCann then saw a black male matching that description attempting to exit the bank's front entrance. When he spotted Officer McCann, the individual turned, ran into a glass wall, and then back into the bank. Officer McCann's report describing the incident indicated that the individual left fingerprints on the glass.

Meanwhile, Officer Hopkins saw an individual wearing a tan jacket, tan pants, and a black ski mask hiding in the bushes about 30 feet from the bank. The individual ran south. While Officer Hopkins was distracted by this individual, the first individual he encountered, wearing the dark clothing, ran east from the bank. Officer Hopkins pursued, but tripped and lost track of the suspect. Officer Hopkins radioed to dispatch that the suspect was running east towards North Clinton Street.

That night, presumably around the same time, a citizen, Gerald Campbell, was driving on North Clinton Street, when

he noticed multiple police squad cars in the area. He then saw a man about a block away wearing dark clothing running east in the direction of the Coliseum Park Apartments. Campbell could not discern whether the individual was wearing a ski mask. He reported the sighting to a police officer.

When Officer Kenneth Fries heard on his radio that a suspect with dark clothing was running east from the Standard Federal Bank, he drove as far east as he thought the suspect might have run, to the Coliseum Park Apartments. There, he saw a black male in dark clothing but not wearing a mask. Officer Fries, about 100 yards away from the individual, followed briefly but eventually lost sight. Soon thereafter, Officer Fries encountered two other officers who informed him that the suspect had been reported running in their direction. The officers then heard a noise in the bushes, shined a flashlight, saw a man running north along a creek, and yelled to him to stop running. The man, who was the same man Officer Fries had seen a moment earlier, continued to run until he reached an area which was impassable. He threw an object, later identified as a flashlight, into the weeds. The man, identified as defendant Anthony Allen, was apprehended by the police. Approximately 30 minutes had elapsed since Officer Hopkins first arrived at the bank.

During the pursuit, Officer Richard Jennings initiated a canine track of the suspect from the bank that led northeast from the bank and across North Clinton Street towards the Coliseum Park Apartments. After the canine led Officer Jennings to approximately 80 feet from where the officers picked up Allen, he pulled the canine off track because the area was contaminated by the presence of police officers and squad cars.

After the officers apprehended Allen, Officer Hopkins went to the apartment complex and identified him as the man he had seen in the bank. Allen was sitting in the back

of a squad car when he was identified. Allen was taken back to the crime scene and photographed standing beside a squad car with his hands behind his back.

When detectives conducted their investigation inside the bank, they found cement pieces and dust everywhere with a tennis shoe footprint in the dust near the vault and another boot print on top of it. Detectives also found a pair of gloves in the bank's back office. Although they recovered fingerprints from the glass door that Officer McCann indicated the suspect had touched, the prints did not match those of the defendant. Outside the bank, where Officer Hopkins had seen the second suspect hiding in the bushes, detectives found a nylon bag, two crowbars, a sledge hammer, a box with a picture of binoculars, and a money counter.

Allen was charged with committing and aiding and abetting the burglary of the Standard Federal Bank in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2. At trial, witnesses testified to the events as recounted above. The photograph taken of Allen standing in front of the police car was admitted into evidence without objection and shown to the jury. Further, following an evidentiary hearing, the court admitted expert testimony indicating that, although it could not be conclusively determined, Allen's shoes could have formed the tennis shoe print found in the cement dust in the bank. The jury convicted Allen who now appeals.

## II.  Analysis

### A.  Sufficiency of the Evidence

On appeal, Allen's primary contention is that the government did not present sufficient evidence for the jury to convict him of burglary of the Standard Federal Bank in violation of 18 U.S.C. § 2113(a) and § 2. Ordinarily, this court will reverse a criminal conviction on insufficiency grounds

if, viewing all evidence in the light most favorable to the government, no rational jury "could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Toro*, 359 F.3d 879, 883 (7th Cir. 2004). In this case, however, Allen's burden is even higher. Allen did not seek a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and, thus, he waived his right to challenge the sufficiency of the evidence. *See United States v. Buchmeier*, 255 F.3d 415, 419 (7th Cir. 2001) (noting that failure to file a Rule 29 motion results in waiver of a challenge to the sufficiency of the evidence). Therefore, this court will review for plain error and reverse only if Allen demonstrates that absent reversal, a manifest miscarriage of justice will result. *United States v. Rock*, 370 F.3d 712, 714 (7th Cir. 2004). Under this most demanding standard, reversal is warranted only "if the record is devoid of evidence pointing to guilt, or if the evidence on a key element was so tenuous that a conviction would be shocking." *United States v. Taylor*, 226 F.3d 593, 597-98 (7th Cir. 2000) (internal citations omitted). On the record before us, Allen cannot overcome this arduous standard of review.

In order to support a conviction for burglary under 18 U.S.C. § 2113(a), the government had to establish that Allen entered the bank with the intent to commit a felony in it. *United States v. Castaldi*, 453 F.2d 506, 508-09 (7th Cir. 1971). Allen does not dispute that whoever was in the bank intended to burglarize it; rather, he challenges his conviction, arguing that the government failed to establish that he was the individual the police officers encountered at Standard Federal Bank.

Several facts support Allen's conviction. First, Allen matches the description of the suspect that Officer Hopkins relayed over the police radio. In fact, Officer Hopkins identified Allen as the individual he encountered at the bank that night. Second, the police apprehended Allen approximately 20-30 minutes after Officer Hopkins lost sight of him in the

very area to which all evidence (e.g., Campbell's testimony, police testimony, and the canine track) indicated that the suspect had run. Third, the shoe print evidence, although not conclusive, suggested that the perpetrator wore shoes of the same size and type as Allen's. Finally, the circumstances of Allen's arrest support his conviction. Allen ran from the police when they yelled for him to stop and threw a flashlight into the bushes just before he was apprehended. Taken together, this evidence, viewed in the light most favorable to the prosecution, could have led a rational juror to find Allen guilty beyond a reasonable doubt. And, even if not convinced that Allen necessarily acted as a principal in the burglary, the presence of the second suspect hiding in the bushes where the police recovered the burglary tools could have led a rational juror to find that, at the very least, Allen aided and abetted the burglary.[1] It is of little import that the prosecution's case against Allen was largely circumstantial. After all, "[c]ase law recites that circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable." *United States v. Robinson*, 177 F.3d 643, 648 (7th Cir. 1999) (citations omitted). On these facts, the record simply cannot be construed as devoid of evidence pointing to Allen's guilt.

We do not mean to suggest, however, that the government's case against Allen was airtight. There was a break in the chain of sight between when the police encountered the suspect and apprehended Allen, Officer Hopkins identified Allen while he was sitting in the squad car, the police did not have the canine track for the ski mask and, indeed, never recovered the ski mask, and, although slight, there was a discrepancy between the reported height of the suspect and Allen's height. In addition, while potentially explained

---

[1] The elements of aiding and abetting include: "knowledge of the crime being aiding and abetted, a desire to help the activity succeed, and some act of helping." *United States v. Fauls*, 65 F.3d 592, 599 (7th Cir. 1995) (internal citations omitted).

by the fact that Allen was wearing gloves when he was apprehended, the fingerprints recovered at the bank did not match Allen's. Nonetheless, such questions are best explored on cross-examination and in closing argument, but do not necessitate a reversal of the jury's verdict. *See United States v. Lewis*, 100 F.3d 49, 53 (7th Cir. 1996) (noting that insufficiencies in the government's case against the defendant would have been better explored in cross-examination or in closing argument). Further, at most, such deficiencies in the government's case against Allen show "that it may be possible to concoct an alternative theory under which another individual is responsible for the crime," *Robinson*, 177 F.3d at 648. In this case, these deficiencies in the government's case are insufficient to warrant reversal of the jury's verdict, especially under the plain error standard of review. Accordingly, we reject Allen's argument that there was insufficient evidence to support his conviction.

## B. Expert Testimony

We next consider Allen's contention that the district court abused its discretion by admitting expert testimony by Fort Wayne Police Forensic Examiner Thomas Pitzen regarding shoe print evidence. Pitzen testified that, although not a definitive match, the shoes Allen was wearing at the time of his arrest could have made the tennis shoe impression the police found in the cement dust in the bank.

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony

> is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that to be admissible, expert testimony must be both relevant and reliable. Thus, a "district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue." *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). We review *de novo* the district court's application of the *Daubert* framework. *Ammons v. Aramark Unif. Servs. Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). Assuming proper application of *Daubert*, we review the district court's decision to admit or exclude the expert testimony for an abuse of discretion. *Id.*

Allen first attacks the relevance of the expert testimony, arguing that Pitzen's testimony had little value since his opinion was inconclusive. This argument will not carry the day, as an "expert need not have an opinion on the ultimate question to be resolved" to satisfy the relevance requirement. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000); *see also Walker*, 208 F.3d at 587.

Allen also attacks the reliability of the expert evidence, arguing that (1) a layperson could have performed the visual comparison of Allen's shoe and the impression left in the cement, and (2) shoe-print identification is not a reliable methodology because it is not subject to peer review.[2] Allen's arguments are belied by the testimony of two witnesses, Sandra Wiersema (a forensic examiner with the F.B.I.) and John Vanderkolk (manager of the Indiana State Police Laboratory), at the evidentiary hearing. The witnesses testified that accurate comparisons require a trained eye;

---

[2]  Allen does not apparently question Pitzen's qualifications which, as the district court found, are fairly extensive.

the techniques for shoe-print identification are generally accepted in the forensic community; and the methodologies are subject to peer review. We are, therefore, unpersuaded by Allen's argument that the district court abused its discretion by admitting Pitzen's expert testimony regarding the shoe print evidence.

### C.  Admission of the Photograph

We now turn to Allen's argument that he was prejudiced by the admission at trial of a photograph depicting him standing in front of a police car with his hands behind his back and his arm held by a police officer. Because Allen failed to object to the admission of the photograph at trial, we review for plain error. *United States v. Alwan*, 279 F.3d 431, 438 (7th Cir. 2002); *United States v. Richardson*, 562 F.2d 476, 478 (7th Cir. 1977).

Rule 403 of the Federal Rules of Evidence provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. Allen contends that any probative value of the photograph was greatly outweighed by its prejudicial effect because the photograph depicted him in a state of restraint standing in front of the bank, thereby placing him at the scene of the crime. We disagree.

Contrary to Allen's assertion, the bank is not pictured in the photograph. In addition, although it did not depict Allen in the most glowing light, the photograph showed the jury what it already knew, that Allen was in police custody on the night of the burglary. *See Richardson*, 562 F.2d at 478-79 (noting that photos taken upon defendant's arrest told the jury no more about his contacts with the law enforcement than did the testifying agent). Importantly, the photograph also did not suggest that Allen was involved in

prior criminal activity, as it was clear that it was taken incident to Allen's arrest, rather than during a past encounter with the police. *See Beadin v. Clark*, 762 F. Supp. 243, 246 (N.D. Ind. 1990), *aff'd by* 931 F.2d 58 (7th Cir. 1991) (admitting mug shot as it was clear to the jury that it was taken incident to arrest); *see also United States v. Cochran*, 697 F.2d 600, 608 (5th Cir. 1983) (declining to find error in the admission of photographs taken at time of defendant's arrest, as they showed what he looked like on that night and did not indicate any prior criminal activity). Further, the photograph was not without probative value, as it demonstrated that Allen's appearance on the night of his arrest was consistent with the description the police gave of the suspect. *See Richardson*, 562 F.2d at 478-79 (admitting photograph taken during arrest as it was necessary for comparison with bank surveillance photographs). While we recognize that the prosecution had custody of Allen's clothes and thus could have introduced the clothes rather than the photograph into evidence to show that Allen matched the description of the suspect, on this record, we cannot say that the district court committed plain error by admitting the photograph at trial.

## D. Ineffective Assistance

Allen also contends that his trial counsel was ineffective for two reasons: she failed to make a motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and she failed to object to the admission of the photograph of Allen taken upon his arrest. Both omissions resulted in a less scrutinizing standard of review on appeal.

This court employs the familiar two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) to evaluate ineffective assistance of counsel claims: (1) whether counsel's performance fell below an objective standard of reasonableness; and (2) whether the defendant was prejudiced by

counsel's deficient performance. *Id.* at 688-92. In assessing whether counsel was deficient, this court "presume[s] that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged act or omission might have been considered sound trial strategy." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). We will find prejudice where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

With this backdrop, we turn to Allen's ineffective assistance claims. We first consider his argument that his trial counsel was ineffective by failing to move for acquittal. This court has previously rejected a similar argument, reasoning that a failure to file a motion for acquittal was not prejudicial where the evidence against the defendant was sufficient to support a conviction. *See United States v. Draves*, 103 F.3d 1328, 1336 (7th Cir. 1997); *see also United States v. Quintero-Barraza*, 78 F.3d 1344, 1351 (9th Cir. 1995) (finding that although counsel's failure to file a renewed motion for acquittal waived any challenge to the sufficiency of the evidence, it did not constitute ineffective assistance). As discussed above, the evidence against Allen was sufficient to support a conviction and, thus, he was not prejudiced by his counsel's omission. Accordingly, his ineffective assistance claim based on counsel's failure to file a renewed motion for acquittal fails.

Allen's ineffective assistance claim based on his counsel's failure to object to the admission of the photograph of Allen suffers the same fate. We can only surmise as to why Allen's trial counsel did not object to the admission of the photograph at trial. She may have opted against objecting for strategic reasons, namely to avoid drawing greater attention to the photograph. *See United States v. Payne*, 741 F.2d 887, 891 (7th Cir. 1984) ("A competent trial attorney might well eschew objecting . . . in order to minimize jury attention to the damaging material."). Or perhaps she declined to object

understanding that any objection would have likely been futile. In any event, we need not decide, as Allen cannot overcome the prejudice prong of the *Strickland* test, for, even without the photograph, there was sufficient evidence to support his conviction.

### E. Aiding and Abetting Jury Instruction

Finally, we consider Allen's challenge to the district court's aiding and abetting jury instruction. The district court instructed the jury regarding aiding and abetting as follows:

> Any person who knowingly aids, counsels, commands, induces or procures the commission of an offense may be found guilty of the offense. That person must knowingly associate with the criminal activity, participate in the activity, and try to make it succeed.

Allen concedes that the instruction was an accurate statement of the law, but argues that the district court misled the jury by not advising it that mere presence at the crime scene does not constitute aiding and abetting. Although Allen's trial counsel objected to the instruction on the grounds that an aiding and abetting instruction was altogether inappropriate because, according to him, the person in the bank was acting as a principal and not an aider and abettor, he did not object to the instruction as incomplete. Thus, Allen has forfeited this objection and we review for plain error. *See United States v. Bailey*, 227 F.3d 792, 799 (7th Cir. 2000) (noting that a "party must state both the matter objected to and the grounds objected on to preserve the objection for appellate review"). We will find plain error where the error seriously affects the fairness, integrity, or public reputation of the proceedings. *United States v. Moore*, 363 F.3d 631, 639 (7th Cir. 2004). Allen cannot meet this burden. Allen concedes that the aiding and abetting instruction was accurate. Moreover, the evidence does not suggest that

Allen was merely present at the scene of the crime; rather, it suggests that he actively participated in it.

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of conviction.

A true Copy:

    Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*