In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-4040

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MARIETTA SQUIBB,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:06cr0086(02) RM—**Robert L. Miller, Jr.**, *Chief Judge.*

———————

ARGUED JUNE 11, 2008—DECIDED JULY 17, 2008

———————

Before MANION, ROVNER, and TINDER, *Circuit Judges.*

PER CURIAM. A jury found Marietta Squibb guilty of committing mail and wire fraud, and of conspiring to defraud the United States. The district court sentenced her to ninety-six months' imprisonment. On appeal she argues that the government presented insufficient evidence to show her knowledge of the conspiracy, and thus, she contends, her convictions should be overturned. Sufficient evidence supported the jury's verdicts; therefore, we affirm.

## I. Background

The facts are recounted in the light most favorable to the government. *See United States v. Kelly*, 519 F.3d 355, 362 (7th Cir. 2008). Marietta Squibb and her husband, Thomas, were a well-to-do couple who lived in Mishawaka, Indiana. The Squibbs were respected members of their community, and Thomas[1] had a reputation for being shrewd with investments. Beginning in 1995 Thomas solicited money from individuals to develop two "projects": campgrounds in various cities in Michigan and condominiums in Naples, Florida. Each investor was told that only eight or nine others were helping with the enterprise; in fact, over the course of the scheme the Squibbs took in nearly 200 investors, from whom they received roughly $15 million.

Contrary to what they told the investors, the Squibbs did not build campgrounds or condominiums with the money, but instead used it for personal benefit. Thomas and Marietta issued promissory notes to the investors and when the time came for them to send interest checks, the Squibbs used the money received from later investors to pay off the earlier investors. The operation ran smoothly at first, but after several of the Squibbs' interest checks bounced, one investor became suspicious, researched the campground's corporate office, and discovered that company representatives had never heard of the Squibbs. By this time the Securities and Exchange Commission (SEC) had also gotten wind of the scheme, and it ultimately unraveled in early 2006.

---

[1] From here on, we refer to Thomas and Marietta Squibb by their first names for the sake of clarity.

In July 2006, Thomas and Marietta were each indicted on one count of conspiring to defraud the United States, *see* 18 U.S.C. § 371, four counts of mail fraud, *see* 18 U.S.C. § 1341, and thirteen counts of wire fraud, *see* 18 U.S.C. § 1343.

In May 2007 the Squibbs were tried by a jury. The government called as witnesses more than twenty victims of the Ponzi scheme, and several of them testified to Marietta's involvement. According to one witness, she sent all of her correspondence to the Squibbs through certified mail and Marietta signed for that mail. Marietta also signed several promissory notes and financial statements. Thomas reassured that victim that in case of an emergency, Marietta knew "how to take care of things." And when the interest payments from the Squibbs were tardy, the witness primarily contacted Marietta.

Another witness, who invested $300,000 with the Squibbs, testified that he became concerned after his first interest check bounced in October 2005. The victim had had difficulty contacting Thomas, and Marietta informed him that Thomas had injured his head while playing basketball. Consequently, Marietta said that she was "taking over" the investment program in Thomas's absence. According to the witness, Marietta reassured him that he would be paid. Marietta also told him that she would call him back after she determined in which property he had invested. By this time, the witness said, he was highly perturbed and expressed his concerns to Marietta, but she reiterated that "nobody was going to lose their money." Marietta asserted that she had previously traveled to the campgrounds, and she verified that the development was underway.

Another witness testified that he invested $75,000 but received only one interest payment. When he called to try

and recover the rest of his money, Marietta told him that "there was some discrepancy in the contracts and signatures . . . but it would all be straightened out." The witness described Marietta as "very, very knowledgeable" about the operation and said that her manner of speaking was "very authoritative."

Marietta also took the stand. She testified that Thomas did not explain his business ventures to her and, although her signature was on several of the promissory notes, she maintained that her signature had been forged. Marietta admitted that she tried to convince several investors that they would be paid when Thomas sustained the head injury, but, she said, she did so only at Thomas's direction. But on cross-examination Marietta conceded that she had filled out several of the promissory notes and had signed for certified mail that was sent from the investors. Additionally, Marietta acknowledged that she balanced several joint checking accounts and that some of those accounts contained money from the investors. The government also highlighted several transactions between Thomas's business account and Marietta's personal account that Marietta could not explain.

At the close of trial, the jury found Marietta guilty on seventeen of the twenty counts with which she was charged. Thomas was convicted on all counts. Marietta was sentenced to ninety-six months' imprisonment, which she does not challenge on appeal.

## II. Analysis

Marietta contends that the jury's verdicts should be set aside because it was not presented with enough evi-

dence to support its finding that she was an active partici-
pant in the scheme. As a general matter, defendants
"challenging the sufficiency of the evidence face a high
burden." *See United States v. Martinez*, 518 F.3d 505, 509
(7th Cir. 2008). We ordinarily would uphold the jury's
finding so long as "any rational trier of fact could have
found the essential elements of the crime beyond a rea-
sonable doubt." *United States v. Seymour*, 519 F.3d 700, 714
(7th Cir. 2008) (internal quotation marks and citation
omitted); *see United States v. Hatten-Lubick*, 525 F.3d 575,
579 (7th Cir. 2008). But in this case Marietta did not move
for a judgment of acquittal under Rule 29 of the Federal
Rules of Criminal Procedure after the jury returned its
verdicts; therefore, we review her claim for plain error. *See
United States v. Miller*, 405 F.3d 551, 556 (7th Cir. 2005);
*cf. Hatten-Lubick*, 525 F.3d at 579. "Under this most de-
manding standard, reversal is warranted only 'if the rec-
ord is devoid of evidence pointing to guilt, or if the evi-
dence on a key element was so tenuous that a convic-
tion would be shocking.' " *United States v. Allen*, 390 F.3d
944, 948 (7th Cir. 2004) (quoting *United States v. Taylor*,
226 F.3d 593, 597-98 (7th Cir. 2000)).

Focusing solely on the conspiracy charge, Marietta argues
that the government did not prove that she knew that her
husband's enterprise was fraudulent. But many witnesses
testified that Thomas told them that Marietta was capable
of running the operation in his stead and that she actually
did so while Thomas was incapacitated. Other witnesses
described telephone conversations with Marietta where she
reassured them in an "authoritative" manner that they
would be paid. Marietta also signed promissory notes and
financial statements, balanced the checking accounts, kept
track of correspondence to the Squibbs, and regularly
answered the investors' questions. Marietta testified that

she acted only at her husband's bidding, but the jury was entitled to credit the victims' testimony that she played an active role in the scheme. *See United States v. Bowman*, 353 F.3d 546, 552 (7th Cir. 2003).

In similar cases involving a conspiracy between spouses, we have upheld the finder of fact's determination of the scope of each spouse's involvement in the conspiracy. For instance in *United States v. Zaccagnino*, 467 F.3d 1044 (7th Cir. 2006), a husband and wife were indicted on several counts related to an investment scheme. *Id.* at 1044. The wife pleaded guilty to three of the charges, but at sentencing she argued that she initially did not know that the scheme was fraudulent and thus should not be held accountable for the total loss amount. *Id.* at 1046. In that case we noted that the finder of fact specifically chose not to credit her version of events, and we concluded that it did not err in doing so. *Id.* at 1048; *see generally United States v. Gunning*, 984 F.3d 1476, 1481 (7th Cir. 1993) (upholding jury's finding that wife knowingly joined conspiracy where she traveled with husband to crime scene carrying handgun). In this case, Marietta similarly asks us to reweigh the evidence on appeal, which we will not do. *See United States v. Moore*, 425 F.3d 1061, 1072 (7th Cir. 2005); *United States v. Carter*, 410 F.3d 942, 953 (7th Cir. 2005). The jury found that Marietta knowingly participated in the conspiracy and nothing in the record permits us to overturn that determination. *See United States v. de Soto*, 885 F.2d 354, 366-67 (7th Cir. 1989).

The record is not devoid of evidence of Marietta's guilt, and her convictions are not "shocking." We therefore AFFIRM the convictions.