NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2009
Decided May 6, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-1419

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 07-CR-054-001 |
| JEFFREY L. CARTER | |
| *Defendant-Appellant.* | J.P. Stadtmueller, |
| | *Judge.* |

**O R D E R**

After a jury trial, Jeffery Carter was convicted of distributing crack, *see* 21 U.S.C. § 841(a)(1), and the district court sentenced him to 180 months in prison. Carter filed a notice of appeal, but his appointed counsel now seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he cannot discern a nonfrivolous basis for appeal. Because counsel's supporting brief is adequate, we limit our review to the potential issues identified in counsel's brief and Carter's Circuit Rule 51(b) response to his lawyer's motion to withdraw. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

In 2007 police arrested Carter after monitoring a drug deal between Carter and an informant, Tremaine Gilmore. Gilmore had called Carter to arrange to buy two ounces of

crack.  Police drove Gilmore to the street corner where he had agreed to meet Carter, and Gilmore phoned Carter to complete the deal.  Carter told Gilmore that he was sending a woman wearing a blue jogging suit to deliver the drugs.  The police then saw a female (who was a minor) fitting that description, arrested her, and confiscated two bags of crack.  The police also arrested Carter, who was nearby, and seized the keys in his possession.

After Carter's arrest, police officers weighed the crack seized from the girl as 55.96 grams.  A forensic analyst in the Wisconsin State Crime Lab, however, weighed it at 38.1678 grams, and later testified at trial that the difference could have resulted from a loss of moisture.  The police also found guns and more drugs in the home of Lakesha Lampkin, whose keys Carter had been found possessing.

The government indicted Carter on four counts. In Count I—the only count involving Carter's drug sale to Gilmore—the government charged Carter with selling 50 grams or more of crack.  *See* 21 U.S.C. § 841(a)(1).  In Counts II and III, related to the guns and drugs found in Lampkin's home, Carter was charged with possessing crack with the intent to sell it, *see id.*, and for being a felon in possession of a firearm, *see* 21 U.S.C. § 922(g)(1).   In Count IV, the government charged Carter with selling crack in an unrelated incident in 2005.  A jury convicted Carter on the first count, but found that he distributed less than 50 grams of crack.  It acquitted him of the second and third counts.  On the fourth count, the jury was unable to reach a verdict, and after the court declared a mistrial, the government dropped the charge.

At sentencing the government argued that in determining Carter's sentencing range, the district judge should consider the conduct charged under counts two through four, even though the jury had not found Carter guilty beyond a reasonable doubt on those charges. The judge refused, and a probation officer calculated Carter's offense level using a drug quantity between 35 grams and 50 grams, resulting in a base offense level of 28.  *See* U.S.S.G. § 2D1.1(c)(6).  After a two-point increase for using a minor to commit the offense, *see* U.S.S.G. § 3B1.4, the probation officer calculated Carter's offense level to be 30.  Based on his criminal history category of V, Carter's guidelines range was 151 to 188 months, and the judge sentenced him to 180 months' imprisonment.

Counsel and Carter first consider whether Carter could argue that the evidence was insufficient to support Carter's conviction on the first count.  We would uphold a jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Squibb*, 534 F.3d 668, 671 (7th Cir. 2008) (internal quotation marks omitted).  To convict Carter on the first count, "the government had to establish two elements: (1) that he knowingly distributed . . . cocaine base and (2)

that he knew that what he was distributing was a controlled substance." 21 U.S.C. § 841(a)(1)." *United States v. Graham*, 315 F.3d 777, 781 (7th Cir. 2003). We agree with counsel that the government presented sufficient evidence for a rational trier of fact to find Carter guilty of knowingly distributing crack: Gilmore testified that he had arranged to purchase two ounces of crack from Carter and that Carter had told him to expect a girl in a blue jogging suit; several police officers testified about the details of the transaction, including the arrest of the delivery girl wearing the jogging suit holding two ounces of crack; police officers testified that they arrested Carter near the location of the would-be sale; and law enforcement agents testified that the substance was, in fact, crack.

Carter responds that many of the government witnesses had something to gain from testifying against him, and thus their testimony was not credible. But credibility is the province of the jury, and it could rationally reject an argument that the witnesses should not be believed. *See United States v. Bailey*, 510 F.3d 726, 734 (7th Cir. 2007) (holding that the fact that a witness cooperated in exchange for a shortened prison sentence is insufficient to upset a jury's decision to credit the testimony). Carter also argues that because he was acquitted of possessing the guns and drugs found at Lampkin's home, he is innocent on Count I, but the conduct underlying those two counts is unrelated to the conduct for which he was convicted on Count I, the sale of drugs to Gilmore.

Counsel next considers whether Carter could argue on appeal that he received ineffective assistance of counsel. But a claim of ineffective assistance of counsel should not be raised on direct appeal unless ineffectiveness is apparent from the trial record. Here counsel can point to nothing within the record to support a claim for ineffective assistance of counsel. *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009). Thus any argument on direct appeal that Carter's counsel was ineffective would be pointless.

Carter and counsel also consider whether Carter could challenge the calculation of his guidelines range. Carter maintains that the district court miscalculated his criminal history score by improperly using the guideline for prior convictions for contempt of court—U.S.S.G. § 4A1.2(c)(1)—to add points to his score for his prior conviction for bail jumping. This too is a frivolous argument because the district court did not even use § 4A1.2(c)(1) in computing Carter's criminal history. Rather, it properly calculated Carter's criminal history using § 4A1.2(k), based on Carter's prior revocation of probation, to which the guideline expressly applies. Counsel also raises the possibility that Carter could challenge the four-point increase in his offense level for the use of a minor, based on Carter's assertion that he did not know that she was under 18. We agree with counsel that this argument, too, would necessarily fail: knowledge is not required for an enhancement under § 3B1.4. *See United States v. Ceballos*, 302 F.3d 679, 697 (7th Cir. 2002).

Carter also maintains that, after the sentencing judge rejected the government's request to find that he was responsible for selling more than 50 grams of crack, the judge erred by failing to explain the reasons for finding him responsible for selling between 35 grams and 50 grams of crack. This argument would be frivolous because the record makes clear that the judge based his finding on the weight calculated by the forensic analyst at the Wisconsin State Crime Lab: over 38 grams.

Carter also argues that district court erred in failing to apply retroactively the reduced offense levels for crack offenses. *See* U.S.S.G. § 2D1.1, Supp. to App. C 226-31 (2008) (Amendment 706). This is also a frivolous argument because Carter was sentenced under the 2007 guidelines that already included the reduced offense levels for crack. *Compare* U.S.S.G. § 2D1.1(c)(5) (2006) (base offense level of 30 for 35 to 50 grams of crack) *with* U.S.S.G § 2D1.1(c)(6) (2007) (level of 28 for same amount).

Finally counsel considers whether Carter could challenge the reasonableness of his sentence. But Carter's guidelines sentence is presumptively reasonable. *See United States v. Cano-Rodriguez*, 552 F3.d 637, 638 (7th Cir. 2009). Furthermore, the district court justified its sentence with reasons that adhere to the relevant considerations under 18 U.S.C. § 3353(a), and counsel can point to nothing that might arguably rebut the presumption of reasonableness. *See United States v. Gordon*, 513 F.3d 659, 666 (7th Cir. 2008).

We therefore GRANT counsel's motion to withdraw and DISMISS the appeal.