NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 22, 2009
Decided December 22, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-2556

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| *v.* | |
| | No. 08 CR 00024 |
| SCOTT HATFIELD, | |
| *Defendant-Appellant.* | David F. Hamilton, |
| | *Judge.* |

## O R D E R

Following a two-day trial, a jury found Scott Hatfield guilty of possessing child pornography, *see* 18 U.S.C. § 2252(a)(4)(B), and he was sentenced to a below-guidelines term of 84 months in prison. Hatfield appeals, but his appointed counsel reports that he cannot identify any nonfrivolous issues on appeal and therefore seeks to withdraw. *See Anders v. California*, 386 U.S. 738, 744 (1967). Counsel's supporting brief is facially adequate, and Hatfield did not respond to our invitation to comment on his lawyer's submission. *See* CIR. R. 51(b). We confine our review to the five potential issues identified in counsel's brief. *See United States v. Schuh*, 289 F.3d 968, 974 (7th Cir. 2002).

Police executed a search warrant of Hatfield's home looking for evidence of illegal downloads of child pornography and found a home office full of computer equipment. After receiving *Miranda* warnings, Hatfield explained that he ran a computer business from his home but used one of the "downloader" towers in the room specifically for his personal file-sharing activities. Police took this tower to a mobile forensic laboratory parked in front of Hatfield's home for further examination. Hatfield initially admitted using a file-sharing program to download music, games, movies, and adult pornography. But when he learned that police were examining the tower outside, he quickly confessed to downloading child pornography. He described some of the images that would be found on the tower and also acknowledged using search terms such as "Lolita" and "PTHC" that were known to police to return links to child pornography. Hatfield told the officers that he also burned some of this content on CDs and DVDs that he marked with an "X." Police took Hatfield to the mobile lab, and he identified several illegal video clips from the tower.

Police seized the downloader tower, a number of loose hard drives, and a CD and DVD marked with an "X." The materials then were turned over to a forensic computer examiner, who found thousands of images of child erotica and child pornography and 58 illegal videos, all saved in a file-sharing folder on the downloader tower. Hatfield was charged with knowing possession of the 58 videos, including 12 specifically listed in the indictment.

Before trial Hatfield stipulated both to the requisite interstate-commerce nexus and to the fact that the 58 videos and other seized images and files fit the legal definition of child pornography. But the government correctly anticipated that Hatfield would try to imply that his computer equipment had been compromised by someone who downloaded the child pornography without his knowledge. To combat this defense the government filed a pretrial motion announcing its intent to introduce uncharged materials under Federal Rule of Evidence 404(b), including a sex video of Hatfield and his wife found in the same file-sharing folder as the 58 charged videos, and additional child pornography found on the marked CD and DVD and in the "recycle bin" of one of the loose hard drives. Hatfield conceded that the material was relevant to issues other than propensity, but argued that the prejudicial effect would far outweigh any probative value. The district court concluded that the uncharged material was admissible so long as limiting instructions were given to cabin the jury's consideration of the evidence.

During trial Special Agent Michael Johnson testified about the results of the police search of Hatfield's home, and he described his lengthy interview with Hatfield, including Hatfield's admissions. Sergeant Jennifer Barnes, the forensic computer examiner, explained that the configuration of the files on the downloader precluded the possibility that an outside party was to blame. She testified that Hatfield's personal files, including the sex

video of him and his wife, were commingled with the illegal videos. Barnes also explained that the passwords and registration names on the downloader tower matched those Hatfield used on other computer equipment, including the loose hard drive containing more child pornography. These identifiers were all variations of Hatfield's initials or the names associated with his home business. Barnes testified that the log of Hatfield's search terms included many associated with child pornography and several that matched the terms Hatfield admitted using to police. Brief clips of the 12 videos listed in the indictment were played for the jury, but the government did not publish the uncharged material described in its pretrial motion. Instead, Barnes described the items and explained how their nature and location demonstrated that the downloads were not accidental. Hatfield did not take the stand, choosing instead to have counsel suggest on cross-examination and in closing argument that someone else could have been responsible for the downloads.

The jury found Hatfield guilty, and at his sentencing hearing he expressed remorse for his actions. The district court calculated a guidelines imprisonment range of 108 to 120 months, but Hatfield's sincerity, his compliant behavior while on pretrial release, and his rededication to his family, his church, and his work did not go unnoticed, and the court settled on a below-guidelines range of 84 months in prison.

In his *Anders* submission counsel first considers whether Hatfield could argue that the district court erred in admitting Barnes's descriptions of the uncharged material. We would review the court's evidentiary ruling for an abuse of discretion, *United States v. Zahursky*, 580 F.3d 515, 523 (7th Cir. 2009), and we agree with counsel that this argument would be frivolous. Evidence of other acts may not be offered to establish a propensity for criminal behavior, but may be used to prove the defendant's knowledge, intent, motive, or absence of mistake. FED. R. EVID. 404(b); *United States v. Conner*, 583 F.3d 1011, 1021 (7th Cir. 2009). Because Hatfield wanted the jury to believe he was ignorant about the child pornography on his computer equipment and storage media, the district court reasonably determined that Barnes's limited description of the uncharged materials was relevant to corroborate Johnson's testimony about Hatfield's statements and to show Hatfield's cyber-fingerprints on all the seized computer materials. *See United States v. Ganoe*, 538 F.3d 1117, 1123-24 (9th Cir.), *cert denied*, 129 S.Ct. 2037 (2009) (agreeing with district court that testimony about sexually explicit names and storage configuration of child-pornography files on defendant's computer was relevant to establishing defendant's knowledge of their content); *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir.), *cert denied*, 129 S.Ct. 512 (2008) (explaining that testimony about how defendant organized and named computer files containing child pornography was relevant to proving knowledge and absence of mistake); *United States v. Dodds*, 347 F.3d 893, 898 (11th Cir. 2003) (noting that defendant's placement of images of child pornography in self-title computer files belied claim of ignorance). Any risk of prejudice from this evidence was minimized by the government's

decision to have Barnes describe these items instead of publishing them to the jury and by the limiting instructions given before Barnes's testimony and again before deliberations. *See United States v. Lee*, 558 F.3d 638, 649 (7th Cir. 2009).

Counsel also evaluates whether Hatfield could argue that the district court abused its discretion in allowing the jury to view clips of the charged videos when he already stipulated that each fit the legal definition of child pornography. Based on the Supreme Court's ruling in *Old Chief v. United States*, 519 U.S. 172 (1997), counsel explains, Hatfield could argue that the videos were highly prejudicial and his stipulation obviated the government's need to show them to the jury.

In *Old Chief*—a case involving possession of a firearm by a felon—the Supreme Court reversed the defendant's conviction because the district court had admitted his prior criminal record into evidence despite his stipulation to a prior felony conviction. 519 U.S. at 174. Although both the stipulation and the direct evidence of the defendant's criminal record carried the same evidentiary value, the Court noted that there was an inherent risk of prejudice in using his record given the nature of the defendant's previous felony, and thus his stipulation should have been accepted as an adequate substitute. *Id*. at 191. But stipulations generally cannot substitute for the government's chosen evidence. *Id*. at 186. In *United States v. Phillipi*, 442 F.3d 1061, 1064 (7th Cir. 2006), we explained that the holding of *Old Chief* is limited to cases where the defendant's status as a felon is at issue. And other circuits have explicitly stated that arguments based on *Old Chief* are not persuasive in the context of child-pornography prosecutions. *See, e.g., United States v. McCourt*, 468 F.3d 1088, 1091-92 (8th Cir. 2006); *United States v. Campos*, 221 F.3d 1143, 1149 (10th Cir. 2000). Although prejudicial, the clips of the 12 videos were not unfairly so, and because they were central to the charged conduct the government had the right to present them to the jury. *See, e.g., United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009); *Morales-Aldahondo*, 524 F.3d at 120; *Dodds*, 347 F.3d at 898-99; *United States v. Raney*, 342 F.3d 551, 560 (7th Cir. 2003); *United States v. Angle*, 234 F.3d 326, 343 (7th Cir. 2000).

Counsel next assesses whether Hatfield could argue that the government's evidence was insufficient to support his conviction. We would review this issue under the plain error standard because Hatfield did not move for a judgment of acquittal. *See* FED. R. CRIM. P. 29; *United States v. Squibb*, 534 F.3d 668, 671 (7th Cir. 2008). We would review the record to determine if it is "devoid of evidence pointing to guilt, or if the evidence on a key element was so tenuous that a conviction would be shocking." *United States v. Allen*, 390 F.3d 944, 948 (7th Cir. 2004). Counsel correctly concludes, however, that there was more than enough evidence to support the jury's verdict. Based on Hatfield's statements to authorities, the overwhelming physical evidence recovered from his home, and the extensive testimony

from police officers linking the illegal material to Hatfield, we agree with counsel that a sufficiency argument would be frivolous.

Counsel also considers whether Hatfield could challenge the reasonableness of his prison sentence. But counsel has not found any basis to contest the district court's application fo the guidelines, nor does counsel identify any mitigating factor that was ignored by the court. We have never declared a below-range sentence to be unreasonably high, s*ee United States v. Poetz*, 582 F.3d 835, 837 (7th Cir. 2009); *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008), and we see nothing in this record that would make Hatfield's the first.

Finally, counsel asks whether Hatfield could make a claim of ineffective assistance of counsel. Counsel correctly notes, however, that Hatfield should save any such claim for collateral review where a complete record can be made. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Harris*, 394 F.3d 543, 558 (7th Cir. 2005).

We therefore GRANT the motion to withdraw and DISMISS Hatfield's appeal.