NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2016
Decided July 25, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-1259

| | |
|---|---|
| JOHN R. MARTIN, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 13-CV-1364 |
| | |
| BRIAN FOSTER, | Nancy Joseph, |
| *Respondent-Appellee*. | *Magistrate Judge*. |

**O R D E R**

After a first trial that ended in acquittals on two charges and a mistrial on two others, appellant John Martin was found guilty of a single count of child enticement in violation of Wisconsin law. See WIS. STAT. § 948.07. He was sentenced as a repeat offender to mandatory life imprisonment. In Wisconsin, child enticement is defined as luring, or attempting to lure, a minor into a "vehicle, building, room, or secluded place" for any of several enumerated unlawful purposes, including engaging in sexual contact or intercourse with the minor. *Id.* Martin's conviction rests on five handwritten notes encouraging "C.P.G.," his 15-year-old victim, to engage in sexual activity. Although he

stipulated to the admission of those notes, he argued that the "secluded place" element was not met. That defense did not prevail.

In state postconviction proceedings, Martin argued that his trial lawyer had rendered ineffective assistance because he did not seek to cross-examine the victim about her allegedly false accusation that another man had indecently exposed himself to her. The state appellate court assumed that this line of questioning would have been permissible and that Martin's lawyer performed deficiently in not pursuing it. But, the court concluded, Martin was not prejudiced because all elements of his crime were established by evidence other than the girl's testimony—mainly his handwritten notes. Martin renewed his claim of ineffective assistance in a petition for a writ of habeas corpus under 28 U.S.C. § 2254. A magistrate judge, presiding by consent, see 28 U.S.C. § 636(c), denied relief but granted a certificate of appealability.

Martin and C.P.G. began communicating shortly after he moved into the apartment building where she lived in the fall of 2005. The allegations against him came to light the following May when a guidance counselor at the girl's school called police. At his first trial Martin was accused of trying three times to entice C.P.G. into a room—a laundromat bathroom the first time and his apartment the second and third times—for the purpose of engaging in sexual contact (Counts 2, 3, and 4). Martin also was charged with sexual assault of a child under the age of 16, see WIS. STAT. § 948.02(2), for allegedly fondling C.P.G. outside of his apartment (Count 1). For all but the laundromat count, C.P.G. was the only eyewitness; for that incident a friend from school testified that she was standing outside the laundromat with C.P.G. and Martin when he asked C.P.G. for oral sex.

Another of the enticement charges (count 3) was corroborated by the notes Martin had delivered to C.P.G. on May 6, 2006, while she was babysitting in the apartment next to his. Martin's five notes (the first hand-delivered and the rest left under an outdoor ashtray for C.P.G. to retrieve) read as follows (all errors in originals):

> Hey, I am not going to play games, nor am I going to continue to try and be with you if you wont take the chance. My wife is gone for 1½ hours and either we do something or Im not going to try no more. let me know. Write back! I'll be out in 10 minutes. Lay the note under in the ash tray. I want this note back
>
> John

Hey, Im not trying to be an ass Im sorry if it comes across that way 1st Why would I lose respect for you? 2nd I am thinking long term but until you take the chance and see you won't know But I am sorry for being an ass. As far as you not ever doing it what all have you done?

P.S. Send the top part of my note so I can get rid of them.

Why you acting all pissed at me? Im sorry I was an ass. As for why Im so pushy it is cause I think your hot and I want you bad. I really want you to give me a BJ or a hand job. Ive wanted you for a bit plus I am scared you aren't serious about me!

I want long term too, but you got to understand if we get caught I get life in the joint so I need you to prove to me you want me like I do you and that to me means taking the risk and being with me in a way that shows your serious Make sure you are getting rid of those/these notes. So what do you say, are you willing to take the risk? I am.

you seem like your outgoing, fun, caring, your very hot, you seem to be a rebel. If you don't want to it's cool. Just please promise you are getting rid of the notes.

The first jury acquitted Martin of sexual assault and of the one enticement count for which corroboration was lacking, but it found him guilty of the enticement counts relating to the laundromat bathroom and his handwritten notes. After the verdicts, though, the trial judge granted a mistrial on those two counts because the prosecutor had introduced evidence—inadvertently, it seems—that Martin had convictions for previous sex offenses committed against children. At Martin's retrial the jury acquitted him of the laundromat incident but found him guilty of the enticement count relating to his handwritten notes. At that trial, in order to establish that Martin had tried to coax C.P.G. into a "room," *i.e.*, his apartment, the prosecution elicited the girl's testimony that she understood Martin's notes to mean that he wanted her to come to his apartment. C.P.G. recalled that Martin had said in the notes that his wife would be "gone for 1½ hours," and she added that on several previous occasions he had invited her into his apartment or garage to perform oral sex on him. Martin did not testify, but his lawyer pointed out

that the notes do not specify a place or time and argued that the defendant's intent might have been "to play games or to flirt."

After his conviction, Martin obtained a new lawyer and moved for a retrial. Martin contended that former counsel should have cross-examined C.P.G. about what the motion for a new trial describes as her false accusation of sexual misconduct made against another neighbor. Martin asserted that, around the same time he and C.P.G. became acquainted, a woman living nearby had seen the girl skulking around her house and called police. C.P.G. told the investigating officer that the woman's husband had exposed himself to her, but the officer disbelieved the girl and gave her an informal written "warning" (which did not trigger any judicial process) rebuking her for trespassing, loitering, possessing tobacco, and "obstructing police investigation." As far as the record shows, the police did not interview the husband, and C.P.G. has never retracted her accusation.

Though the investigating officer's opinion of her claim is not proof that the girl was lying, Martin sought to impeach her at his first trial by questioning her about this "false" accusation. At that time Martin still was charged with sexual assault, not just child enticement, and the trial judge ruled that the evidence was inadmissible under Wisconsin's rape-shield statute, see WIS. STAT. § 972.11(2). The rape-shield statute in effect at the time of Martin's second trial was inapplicable to a charge of child enticement, see WIS. STAT. § 972.11(2) (2009), and so this basis for excluding the purported impeachment fell away after Martin's acquittal on the charge of sexual assault. At the second trial, though, the prosecutor moved *in limine* for the judge to reinstate the previous judge's ruling rejecting the proposed impeachment; the judge did so without opposition or comment from Martin's counsel.

At a hearing on the motion for new trial, former counsel testified that he had no strategic reason for not seeking to cross-examine C.P.G. about her prior accusation, and he conceded that this line of questioning would have been helpful. But, counsel explained, he did not believe that C.P.G.'s credibility made much difference to the count resting on Martin's handwritten notes because those notes were in evidence. The trial court agreed with Martin that the rape-shield statute did not bar this impeachment but reasoned that it still would not have been permissible since the enticement count involving the notes did not turn on C.P.G.'s credibility. C.P.G.'s purportedly false accusation would have been relevant for the enticement charge involving the laundromat incident. But Martin's acquittal on that count, the court concluded, eliminated any possibility that he was prejudiced by counsel's decision not to impeach C.P.G. with her prior accusation.

The Court of Appeals of Wisconsin affirmed. The appellate court assumed without deciding "that the impeachment evidence would have been admissible at the second trial, and that counsel's failure to raise the issue constituted deficient performance." But the court concluded that Martin was not prejudiced, explaining that "the explicit and unambiguous notes were sufficient in and of themselves to establish the elements of the child enticement charge." The appellate court described as "largely unnecessary" C.P.G.'s testimony that Martin had propositioned her previously, and thus, the court reasoned, impeaching the girl would have had "limited value." The court pointed out that in one of his notes Martin promised that he would not "continue to try and be with" the girl if that was what she wanted, and this statement, the court said, "strongly corroborated" C.P.G.'s testimony that he previously had solicited her. "Therefore," the appellate court concluded, "even assuming admissibility and deficient performance, we see no reasonable probability that the absence of this impeaching evidence altered the outcome of the trial." The Wisconsin Supreme Court denied Martin's petition for review.

Martin then filed this § 2254 petition. In denying relief, the magistrate judge held that the "[state] court of appeals did not unreasonably apply governing Supreme Court precedent." Engaging in her own analysis of the prejudice inquiry required by *Strickland v. Washington*, 466 U.S. 668 (1984), the judge agreed with the state appellate court that Martin could not show that he was prejudiced by his trial counsel's assumed deficient performance. (In fact, the judge erred by taking a fresh look at this issue, see § 2254(d)(1), but this error was inconsequential.)

Martin and the state both have filed lengthy briefs in this appeal, but the relevant inquiry is not complicated. The Wisconsin appellate court adjudicated Martin's claim on the merits, and so the Antiterrorism and Effective Death Penalty Act precludes relief unless that court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015). The familiar *Strickland* standard governs claims of ineffective assistance, and so the only issue presented by this appeal is whether the appellate court contradicted or unreasonably applied *Strickland*. See *Monroe v. Davis*, 712 F.3d 1106, 1117 (7th Cir. 2013); *Sussman v. Jenkins*, 636 F.3d 329, 350 (7th Cir. 2011). That inquiry is further narrowed by the state appellate court's assumption that counsel performed deficiently (an assumption that the state accepts for purposes here). Thus the focus is on the appellate court's evaluation of prejudice.

Martin argues that the Wisconsin appellate court unreasonably applied *Strickland*'s prejudice rule, since, in his view, the court evaluated the sufficiency of the evidence

supporting his conviction instead of considering whether an effort to impeach C.P.G. with her allegedly false accusation against the neighbor would have created a "reasonable probability" of a different result. Martin points to the state court's statement that "the explicit and unambiguous notes were sufficient in and of themselves to establish the elements of the child enticement charge."

We do not agree with Martin's criticism of the state court's treatment of the *Strickland* prejudice standard. The court first invoked *State v. Swinson*, 660 N.W.2d 12, 25 (Wis. Ct. App. 2003), for the framework governing claims of ineffective assistance. *Swinson* cites *Strickland* and describes the prejudice standard as requiring a showing that "counsel's errors were serious enough to render the resulting conviction unreliable." *Swinson*, 660 N.W.2d at 25. The state court correctly said that *Strickland* requires the petitioner to establish a "reasonable probability that the absence of this impeaching evidence altered the outcome of the trial." See *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (explaining that *Strickland*'s prejudice standard requires showing a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different); *Mosley v. Atchison*, 689 F.3d 838, 850 (7th Cir. 2012) (same).

The state appellate court did not contradict *Strickland* or unreasonably apply its prejudice standard. Its decision did not rest on an evaluation of the sufficiency of the evidence to support Martin's conviction; rather, the court assessed whether the evidence was so strong that impeaching C.P.G. with her accusation against the neighbor would not have made a difference. See *McNary v. Lemke*, 708 F.3d 905, 917 (7th Cir. 2013) (concluding that petitioner was not prejudiced by counsel's deficient performance because there was "enough other evidence for the jury to convict"); *United States v. Allen*, 390 F.3d 944, 951 (7th Cir. 2004) (concluding that petitioner could not show prejudice because there was sufficient evidence to support conviction). The court reasoned that the notes established the elements of the enticement charge and that the proposed impeachment testimony was not significant. It concluded that there was "no reasonable probability that the absence of [the] impeaching evidence altered the outcome of the trial." Martin disagrees with this conclusion, but that is hardly enough for us to find that the state court's application of *Strickland* was unreasonable. See *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Mitchell v. Enloe*, 817 F.3d 532, 538 (7th Cir. 2016); *Campbell v. Reardon*, 780 F.3d 752, 761–62 (7th Cir. 2015).

Martin also argues that he was prejudiced by his attorney's deficient performance because, he says, he was unable to confront C.P.G. in violation of the Sixth Amendment's Confrontation Clause. By not analyzing the Confrontation Clause aspect of his *Strickland* claim, Martin insists, the state appellate court unreasonably applied federal law.

As Martin correctly points out, we have recognized that a state court might violate the Confrontation Clause by excluding evidence of a witness's prior false accusations. See *Sussman v. Jenkins*, 636 F.3d 329 (7th Cir. 2011); *Redmond v. Kingston*, 240 F.3d 590 (7th Cir. 2001). But these decisions are of no help to Martin. The right of confrontation is relevant to the *admissibility* of such evidence, see *Sussman*, 636 F.3d at 358, but that is not the issue. In Martin's case the state appellate court assumed that impeaching C.P.G. would have been permissible but concluded that Martin was not prejudiced by counsel's failure to do so. The state appellate court therefore did not need to mention Martin's right of confrontation.

We end by noting another problem with Martin's argument about the Confrontation Clause—indeed, with the entire premise of his claim of ineffective assistance. The falsity of C.P.G.'s previous accusation has never been established; we have only the police officer's opinion that she was lying. This distinguishes Martin's case from *Sussman*, 636 F.3d at 338, and *Redmond*, 240 F.3d at 591, where the falsity was either admitted or convincingly demonstrated. Although the state court assumed that C.P.G. had falsely accused the neighbor, there is little in the record to support that assumption.

Accordingly, we AFFIRM the judgment of the district court denying Martin's § 2254 petition.